[No. A046305. First Dist., Div. Five. May 21, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
KYLE JOHNSON, Defendant and Appellant.

## COUNSEL

William Kaufmann, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HANING, J.**—Kyle Johnson appeals his conviction by jury trial of possession of cocaine for sale (Health & Saf. Code, § 11351), contending the trial court erred in denying his motion to suppress evidence. The People concede the underlying search warrant was deficient, but contend the police executed the search with a good faith belief in the warrant's validity.

### FACTS

*The Affidavit*

The following facts were set forth by Police Officer Joe Munoz in the affidavit filed in support of the search warrant: On January 26, 1988, Munoz was the primary investigator of a Vacaville bank robbery. A bank teller told him she was robbed by a Black male carrying a clear plastic bag and a gun and wearing a dark pullover sweatshirt with the hood pulled tightly around his face. He pointed a four- to six-inch blue-steel revolver at her head and demanded she fill the bag with money. The victim identified the gun as a .38-caliber revolver, and another teller identified it as a .22-caliber revolver. Eyewitnesses described the suspect as a Black male adult in his early 20's, approximately 5' 10" tall and 150 pounds, wearing a dark-hooded pullover sweatshirt, dark blue jeans similar to Levi 501's, dirty brown tennis shoes and dark brown leather or vinyl gloves.

On January 27 the bank's operations officer called Munoz saying she had received a telephone call that morning from an anonymous female that

appellant had committed the bank robbery and was responsible for robberies of a laundromat and a 7-Eleven store, and the shooting of Rodney Bass. The anonymous caller also said that appellant drove a green Plymouth Champ with the partial license plate number "366" and lived off of Midway Road. Munoz then contacted Sergeant Terry Thomas, investigations supervisor of the Fairfield Department of Public Safety. Thomas told Munoz they were investigating appellant for the attempted murder of Rodney Bass, that a blue-steel .22-caliber revolver had been used but had not been found, that appellant resided in Fairfield and drove a 1979 Plymouth Champ, license plate number 366 YEF.

Based on information from Thomas, Munoz contacted the manager of the Fairfield apartment complex where appellant allegedly resided. The manager told Munoz that appellant had been living there on and off for about a month and drove a small green Chrysler. Munoz ran a registration check on the license number reported by Thomas and learned it was registered to appellant at a rural Vacaville address. From the Department of Motor Vehicles (DMV) printout and a Fairfield police report, appellant was described as being 6' 3" and 160 pounds. The affidavit noted the six-inch height discrepancy between this information and that obtained from the eyewitnesses. Munoz also learned from Vacaville police that appellant was being investigated for writing checks with insufficient funds.

*Suppression Hearing*

The People stipulated that the search warrant affidavit lacked probable cause, but contended Munoz acted in good faith in relying on the warrant. Munoz testified *he is a 25-year veteran of the police force, has obtained several thousand search and/or arrest warrants and received extensive training in search and seizure.* When he prepared the affidavit he believed there was probable cause to search because the information provided by the anonymous caller was confirmed regarding the description of appellant's car, the partial license plate number, appellant's suspected involvement in the Bass shooting, and the similarity of the weapons used in that shooting and the robbery. Munoz believed that appellant's physical description was consistent with eyewitness accounts of a Black male, although he admitted a six-inch height discrepancy. He failed to state in the affidavit that appellant's DMV photograph depicted him as having green eyes, and did not show appellant's photograph to any of the witnesses. Munoz explained any discrepancy in the physical description by stating it was necessary to take into consideration that witnesses who make observations under menacing circumstances are often very upset and may not have exact recollections.

The trial court determined that Munoz acted in good faith since he verified the informant's information as to the "[c]olor of automobile, license

plate number, knowledge of the similar type of weapon, as well as notifying the Magistrate that although the description of height, race, age and sex was accurate, there was a disparity between the description . . . insofar as height was concerned and the height of this suspect."

## DISCUSSION

Appellant contends the trial court erred in denying his motion to suppress. ■ "A proceeding under [Penal Code] section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court *sitting as finder of fact.* In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. ■ On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. ■ The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. ■ Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraordinary writ. Of course, if such review is nevertheless sought, it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (*People* v. *Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621], footnote, citations and internal quotation marks omitted; see also *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

Appellant argues the search was illegal because Munoz did not execute the warrant with a good faith belief in its validity. ■ In *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405], the Supreme Court held that evidence may not be suppressed if the officer executing the warrant relies in good faith on a warrant, issued by a detached and neutral magistrate, that later is determined to be invalid. An officer will have no reasonable grounds for believing the warrant was properly issued where the magistrate was misled by information in an affidavit which the officer knew or should have known was false, where the magistrate wholly abandoned his role, where the affidavit was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable, or when the warrant was so facially deficient that the officer could not reasonably presume it to be valid. (*Id.*, at p. 923 [82 L.Ed.2d at pp. 698-699].)

Appellant argues that Munoz did not have an objectively reasonable belief that probable cause existed at the time he applied for the warrant because the information obtained from the anonymous informant was not

reasonably corroborated. The question is whether a reasonably well-trained officer in Munoz's position would have known that his affidavit failed to establish probable cause. (*People* v. *Maestas* (1988) 204 Cal.App.3d 1208, 1217 [252 Cal.Rptr. 739].) ■ Probable cause to search exists when, based on the totality of circumstances described in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois* v. *Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317].) Less probable cause is required to support probable cause for a warrant than would be required for a warrantless search. (*People* v. *Fein* (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583]; *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485]; *People* v. *Costello* (1988) 204 Cal.App.3d 431, 446 [251 Cal.Rptr. 325].)

■ Because unverified information from an untested or unreliable informant is ordinarily unreliable, it does not establish probable cause unless it is "corroborated in essential respects by other facts, sources or circumstances." (*People* v. *Fein, supra*, 4 Cal.3d at p. 752; *People* v. *Maestas, supra*, 204 Cal.App.3d at p. 1220.) For corroboration to be adequate, it must pertain to the alleged criminal activity; accuracy of information regarding the suspect generally is insufficient. (*People* v. *Costello, supra*, 204 Cal.App.3d at p. 446.) Courts take a dim view of the significance of "pedestrian facts" such as a suspect's physical description, his residence and his vehicles. (*Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929, 940 [216 Cal.Rptr. 817].) However, the corroboration is sufficient if police investigation has uncovered probative indications of criminal activity along the lines suggested by the informant. (*People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 759 [195 Cal.Rptr. 311].) Even observations of seemingly innocent activity provide sufficient corroboration if the anonymous tip casts the activity in a suspicious light. (*Illinois* v. *Gates, supra*, 462 U.S. at p. 244, fn. 13 [76 L.Ed.2d at p. 552]; *People* v. *Costello, supra*, 204 Cal.App.3d at p. 446.) "It is only where . . . neither the veracity nor basis of knowledge of the informant is directly established, the information is not so detailed as to be self-verifying and there is no logistical or other reason verification from other sources cannot be achieved, that the failure to corroborate may be indicative that it was objectively unreasonable for the officer to believe in the existence of probable cause." (*People* v. *Maestas, supra*, 204 Cal.App.3d at pp. 1220-1221, fn. omitted.)

■ The purpose of the exclusionary rule is to deter future police misconduct and is designed to deter police misconduct rather than to punish the errors of judges and magistrates. (*United States* v. *Leon, supra*, 468 U.S. at p. 916 [82 L.Ed.2d at p. 694].) " 'The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at

the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith however, the deterrence rationale loses much of its force.' . . . [¶] 'If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' [¶] [Citations.] In short, where the officer's conduct is objectively reasonable, [¶] 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act under the circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him [or her] less willing to do his duty.' [Citation.]" (*Id.*, at pp. 919-920 [82 L.Ed.2d at pp. 696-697.)

██ Application of the good faith exception requires a factual presentation of the officers' activity which is *then* measured against a standard of objective reasonableness. (*Higgason* v. *Superior Court, supra*, 170 Cal.App.3d at p. 944.) This objective standard "requires [police] officers to have a reasonable knowledge of what the law prohibits." (*United States* v. *Leon, supra*, 468 U.S. at p. 920, fn. 20 [82 L.Ed.2d at p. 696].)

██ In the instant case we conclude that Officer Munoz's failure to corroborate the evidence received from the anonymous informant does not meet the standard of objective reasonableness. Munoz failed to directly establish the veracity or basis of knowledge of the anonymous informant, the informant's information as to the alleged criminal activity was not self-verifying, and the record does not suggest such corroboration could not be obtained. (See *People* v. *Maestas, supra*, 204 Cal.App.3d at pp. 1220-1221.) His corroboration of appellant's residence and vehicle was detailed, but unrelated to the bank robbery, and he admitted a six-inch height discrepancy in corroborating appellant's physical description. The People place much emphasis on the fact that Munoz determined that a blue-steel revolver was used in both the bank robbery and the attempted murder. However, this is not substantial corroboration since virtually all handguns are either blue-steel or chromium and either a revolver or automatic. Moreover, Munoz failed to confirm whether the other robberies the informant accused appellant of committing even took place, and whether their perpetrator matched appellant's description. He also failed to show appellant's photograph to the bank robbery witnesses. In short, all the police had was an uncorroborated tip from an anonymous informant. As Justice Crosby stated in his concur-

rence to *Higgason*, "[a]ny rookie officer knows uncorroborated, unknown tipsters cannot provide probable cause for an arrest or search warrant." (*Higgason* v. *Superior Court, supra*, 170 Cal.App.3d at p. 952.) We conclude that a well-trained officer would have known that the corroboration was insufficient and that the affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " (*United States* v. *Leon, supra*, 468 U.S. at p. 923 [82 L.Ed.2d at p. 699].)

■ We conclude that the motion to suppress the evidence seized should have been granted. Since the seized evidence was the only evidence supporting appellant's conviction, the court's error cannot be considered harmless beyond a reasonable doubt. (See *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

Reversed.

Low, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 31, 1990.