[No. S017787. Oct. 28, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT ANTHONY CAMARELLA, Defendant and Appellant.

**COUNSEL**

Newsom, Giffen & Bacon, Newsom & Giffen and Brennan J. Newsom for Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Steve White, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, Arnold O. Overoye and Robert R. Anderson, Assistant Attorneys General, Thomas Y. Shigemoto, Michael Weinberger and Carlos A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

Kent S. Scheidegger, Hunton & Williams and R. Hewitt Pate as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**LUCAS, C. J.—**

### I.   Introduction

We granted review to resolve a split of authority in the Courts of Appeal regarding interpretation of the so-called "good faith" exception to the

exclusionary rule, as set out in *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405] (*Leon*). By virtue of California Constitution, article I, section 28, subdivision (d), the issue is purely one of federal constitutional law. (See *In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].)

■ In *Leon*, the high court held "the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." (468 U.S. at p. 900 [82 L.Ed.2d at p. 684].) The court made clear that the government has the burden of establishing "objectively reasonable" reliance (*id.*, at p. 924 [82 L.Ed.2d at p. 699]), and it described four limited situations in which such reliance would not be established, and in which suppression under the exclusionary rule would remain an appropriate remedy: (i) the issuing magistrate was misled by information that the officer knew or should have known was false; (ii) the magistrate "wholly abandoned his judicial role"; (iii) *the affidavit was " 'so lacking in indicia of probable cause' " that it would be " 'entirely unreasonable' " for an officer to believe such cause existed*; and (iv) the warrant was so facially deficient that the executing officer could not reasonably presume it to be valid. (*Id.*, at p. 923 [82 L.Ed.2d at p. 699], italics added.) This case concerns application of the third of these situations.

The issues are: In deciding whether a given case falls within the third situation described above, what test of "objective reasonableness" should apply, and what effect, if any, should a court give to the fact that a magistrate signed a search warrant later used to effect the search?

We distill from *Leon, supra*, 468 U.S. 897, and its progeny the following: If a well-trained officer should reasonably have *known* that the affidavit failed to establish probable cause (and hence that the officer should not have sought a warrant), exclusion is required under the third situation described in *Leon*, and a court may not rely on the fact that a warrant was issued in assessing objective reasonableness of the officer's conduct in seeking the warrant. But in all other cases, unless one of the other limited *Leon* situations is triggered, *Leon*'s "general" rule of nonexclusion will apply.

On the facts of this case, we find the Court of Appeal erred in concluding that a well-trained officer should reasonably have *known* that the affidavit at issue here failed to establish probable cause for the search of defendant's home. Pursuant to *Leon*, we conclude the police reasonably relied on the magistrate's issuance of the warrant, and thus it would be improper to

suppress the evidence on the ground urged by defendant. Accordingly, we will reverse the decision of the Court of Appeal.

## II.  *Facts and Procedure*

Placer County Sheriff's Detective John Addoms received a telephone call from an anonymous informant who claimed defendant was selling cocaine. Addoms conducted additional investigation (described below) and prepared a draft affidavit that he showed to a deputy district attorney, who approved the document. Addoms then submitted the affidavit to a local magistrate, who found probable cause and issued a search warrant. The affidavit's recitation of facts supporting probable cause read as follows:

"Your affiant has been a Deputy Sheriff for the past five years, employed in [that] capacity by the Placer County Sheriff's Office and has acted and received the information set forth in this affidavit in that capacity.

"Your affiant is now and has been for the past two years assigned to the investigation detail thereof.

"On May 6, 1986, your affiant received a telephone call from an anonymous female. The caller told your affiant that she wanted to give your affiant information regarding a cocaine dealer, but feared for her life if her identity was disclosed as an informant and, therefore, refused to identify herself to your affiant.

"The caller told your affiant she used to be a heavy user of cocaine and that she purchased her cocaine from 'Bobby' Camarella. The caller stated that she no longer uses cocaine, but a relative of hers does and he purchases his cocaine from Camarella. The caller told your affiant that she has personally known Camarella to be selling cocaine for at least three years on a continual and ongoing basis and has heard that he had been selling cocaine for at least five years. The caller stated that Camarella works as a bartender at 'Pete and Peter's' and sells cocaine at the bar as well as at his residence. Most recently, within the past 72 hours, the caller stated that her relative told her that he had just purchased one gram of cocaine from Camarella and showed her a paper bindle and indicated that it contained the cocaine just purchased.

"The caller told your affiant that Camarella had recently moved and was living 'near the Tahoe City Golf Course,' but was unable to provide a more detailed location.

"Your affiant checked Sheriff's office records and intelligence files and discovered the following corroborating information:

"In February, 1985, your affiant spoke to a confidential untested informant hereafter referred to as the CI. The CI told your affiant that a person he knew as 'Bobby C' was an active dealer in cocaine. The CI stated that 'Bobby C' worked as a bartender at 'Pete and Peter's' bar and that on two occasions within the past month [the CI] had purchased cocaine from 'Bobby C' at 'Pete and Peter's,' one time purchasing one gram and the other time purchasing one-half gram.

"Your affiant discovered Placer County Crime report #6272-82, attached and incorporated herein as exhibit A. The report indicates that on November 5, 1982, Camarella was arrested by Deputy Shannon of the Placer County Sheriff's Department for possession of cocaine. At the time of booking, Officer Anderson of the Placer County Sheriff's Department found on Camarella's person three sheets of paper with numerous names or initials written on them and numbers written next to them, some [of] the numbers being crossed out.

"Your affiant believes the sheets of paper to be typical of what is commonly known as 'score sheets,' records of controlled substance sales. The names or initials indicat[e] individuals and the numbers indicat[e] the money owed for a controlled substance sale. The number is then crossed out or· changed when payment is made or the amount owed is changed because of additional sales.

"The Placer County Jail booking sheet indicates that Camarella's nickname is 'Bobby' and that he worked as a bartender at 'Pete and Peter's.'

"Your affiant showed Camarella's booking photograph to Detective Jones of the Placer County Sheriff's Department and he identified Camarella as 'Bobby' that works as a bartender at 'Pete and Peter's' bar and indicated that he had seen 'Bobby' at 'Pete and Peter's' on numerous occasions.

"1982 Sheriff's Department local records on Camarella indicate that Camarella lived at 1273 Alpine Way; however the caller had told your affiant that Camarella had recently moved 'near the Tahoe City Golf Course.' Your affiant checked Placer County Assessor records and they indicated that Camarella was the owner of 1273 Alpine Way and 605 Fairway Drive, 605 Fairway Drive being 'near the Tahoe City Golf Course.' Your affiant checked with the Sierra Pacific Power Company and was told that 1273 Alpine Way's power was still in the name of Camarella; however, the address had been changed to in care of Carol Campbell, indicating to your affiant that Camarella no longer lived at the residence. Believing Camarella now lived at 605 Fairway Drive, your affiant drove by the described residence and observed a yellow Jeep Wagoneer Ca. Lic. #2AEN009 to be parked in the driveway.

Your affiant checked DMV records and discovered the vehicle to be registered to Robert A. Camarella."

The affidavit went on to describe Addoms's experience and training. Addoms claimed to have participated in about 300 cases involving controlled substances, and to have been trained by various law enforcement groups in that subject. Addoms recounted that he had recently attended a seminar given by the California District Attorney's Association concerning, inter alia, search warrants in narcotics cases. Addoms concluded that based on his "education, training, and experience," he had "reasonable and probable cause to believe that grounds for the issuance of a search warrant exist, as set forth in section 1524 of the Penal Code, based upon the aforementioned information, facts and circumstances."

The magistrate issued the warrant, and shortly thereafter Detective Addoms conducted a search at 605 Fairway Drive in Tahoe City. The officers discovered various items including 310 grams of cocaine, several "score sheets," and $1,250 in cash. Defendant was arrested and charged with, inter alia, possessing cocaine for sale (Health & Saf. Code, § 11351) and possession of marijuana (*id.*, § 11357, subd. (b)).

At the preliminary hearing, Detective Addoms testified that because the Tahoe City community is small and he and the two other detectives at the local station were well known in the community it would have been difficult to conduct surveillance at the bar. He explained his reluctance even to stop near defendant's home because he feared the occupants would be alerted to the surveillance. As noted above, Addoms stated that he submitted the affidavit to a deputy district attorney for approval before presenting it to the magistrate. Finally, Addoms added that after obtaining the warrant but before serving it he drove past defendant's home at least four times, and saw the yellow jeep each time. Although the magistrate found the warrant overbroad in certain respects and indicated he would exclude evidence relating to the overbroad parts of the warrant (see *post*, p. 607, fn. 7), he nevertheless held defendant to answer on the basis of the nonexcluded evidence listed above.

Thereafter the superior court denied defendant's motion to set aside the information based on illegally seized evidence (Pen. Code, § 995). The court initially found that "substantial evidence" supported issuance of the warrant. On reconsideration of the probable cause issue, however, the court held that probable cause was absent, but declined to exclude the remaining evidence because it concluded that pursuant to *Leon, supra*, 468 U.S. 897, Addoms reasonably relied on the warrant.

Defendant pleaded guilty to possessing cocaine for sale and admitted a related quantity enhancement (Pen. Code, § 1203.073, subd. (b)(1)). The court sentenced him to two years in state prison, dismissed the marijuana charge, and granted bail pending appeal.

The Court of Appeal agreed with the superior court that the affidavit was insufficient to establish probable cause, and hence acknowledged that this is "a pure *Leon* case." Neither party below asserted otherwise.

Addressing the *Leon* issue, the Court of Appeal majority reversed. The majority concluded it was objectively unreasonable for Addoms to believe his affidavit supplied probable cause for issuance of the warrant. In support of this conclusion the court emphasized (i) the absence of "effort to ascertain the truth of the suspicions raised about defendant by the anonymous tipster" through surveillance, and (ii) the staleness of the corroborating information (i.e., the four-year-old prior arrest and the fifteen-month-old prior tip).

By contrast, the dissenting justice maintained that the corroboration, though stale, nevertheless provided some basis for Addoms to reasonably believe probable cause existed. This, in conjunction with the background investigation, Addoms's presentation of the affidavit for approval by a deputy district attorney, and the impracticality of a more extensive surveillance program in the close community involved here, led the dissenting justice to conclude that Addoms "should not be faulted for the magistrate's error in issuing the warrant. It is not enough that a reasonably well-trained officer might have *suspected* the facts did not rise to the level of probable cause. Only where no reasonable officer of reasonable competence would have believed probable cause existed is good faith lacking. This is not such a case." (Italics in original.) As will appear, we believe the dissenting justice's view is in conformity with *Leon, supra,* 468 U.S. 897.

### III. *Analysis*

#### A. *Illinois* v. *Gates*

■ Initially, we review the standards for determining probable cause to support a search warrant. In *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317] (*Gates*), the high court rejected rigid adherence to the "two pronged" probable cause test described in *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]. Instead, the court embraced a "totality of the circumstances" approach under which "[t]he task of the issuing magistrate is simply to make a practical, commonsense

decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Gates, supra,* 462 U.S. at p. 238 [76 L.Ed.2d at p. 548].)

The court observed that "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." (*Gates, supra,* 462 U.S. at p. 232 [76 L.Ed.2d at p. 544].) ▪ And yet, the court noted, there are established guidelines for determining the existence of probable cause: "Our decisions applying the totality-of-the-circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work . . . . [A]n affidavit relying on hearsay 'is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented." (*Id.,* at pp. 241-242 [76 L.Ed.2d at p. 550].) The court explained that the factors set out in its prior cases—i.e., "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' "—are "all highly relevant" factors that, together or separately, "usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." (*Id.,* at p. 230 [76 L.Ed.2d at p. 543].) The court further explained that "a deficiency in one [of these factors] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." (*Id.,* at p. 233 [76 L.Ed.2d at p. 545].)

Addressing anonymously obtained information, the *Gates* court observed, "such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes.' While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not." (462 U.S. at pp. 237-238 [76 L.Ed.2d at p. 548].) In this regard the court noted that when an informant is anonymous and untested, "[i]t is enough, for purposes of assessing probable cause, that '[c]orroboration through other sources of information reduce[s] the chances of a reckless or prevaricating tale,' thus providing a 'substantial basis for crediting the hearsay.' " (*Id.,* at pp. 244-245 [76 L.Ed.2d at p. 552].)

As noted above, the parties do not contest the determination of the superior court and the Court of Appeal, that the magistrate had no "substantial basis" for concluding there was probable cause supporting the search. Although this conclusion is debatable, and although the question is one of law subject to our independent review (*People* v. *Lawler* (1973) 9 Cal.3d

156, 160 [107 Cal.Rptr. 13, 507 P.2d 621]), we decline to disturb the unchallenged legal determination of the lower courts. Even under the "commonsense" and nontechnical approach to probable cause articulated in *Gates, supra,* 462 U.S. 213, it is arguable that additional and independent corroboration by the police was called for in order to establish a "fair probability" that contraband would be found in defendant's house at the time the warrant was to be executed. We thus proceed on the assumption that the affidavit failed to establish probable cause that contraband would be found in defendant's home, and that on the facts presented the magistrate had no "substantial basis" for concluding otherwise. (*Gates, supra,* 462 U.S. at pp. 238, 239 [76 L.Ed.2d at p. 548, 549].)

## B.  *United States* v. *Leon*

We turn to the question of whether evidence must be excluded if it is seized pursuant to a warrant unsupported by probable cause. ■ Under high court cases dating from *Weeks* v. *United States* (1914) 232 U.S. 383 [58 L Ed 652, 34 S.Ct. 341], evidence seized in violation of a defendant's Fourth Amendment rights has been subject to exclusion from the prosecution's case-in-chief. Justice White's opinion for the court in *Leon* concluded, however, that the "benefits" of this rule were "marginal or nonexistent" in a case in which the challenged evidence was "obtained in objectively reasonable reliance on a subsequently invalidated search warrant," and that exclusion in such situations is inappropriate. (*Leon, supra,* 468 U.S. at p. 922 [76 L.Ed.2d at p. 698].) The court observed, " 'If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer *had knowledge, or may properly be charged with knowledge,* that the search was unconstitutional under the Fourth Amendment.' " (*Id.,* at p. 919 [82 L.Ed.2d at p. 696], quoting *United States* v. *Peltier* (1975) 422 U.S. 531, 542 [45 L.Ed.2d 374, 384, 95 S.Ct. 2313], italics added.)

The court cautioned, however, that although " 'a warrant issued by a magistrate *normally* suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search' " (*Leon, supra,* 468 U.S. at p. 922 [82 L.Ed.2d at p. 698], italics added), there are limited situations in which this presumption does not apply. An "officer's reliance on the magistrate's probable-cause determination . . . must be objectively reasonable, cf. *Harlow* v. *Fitzgerald* [(1982)] 457 U.S. 800, 815-819 [73 L.Ed.2d 396, 102 S.Ct. 2727], and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." (*Id.,* at pp. 922-923 [82 L.Ed.2d at p. 698], fns. omitted.) In a footnote after the citation to *Harlow* v. *Fitzgerald* (1982) 457 U.S. 800 [73 L.Ed.2d 396, 102 S.Ct. 2727], the court explained that its inquiry in this regard will be

"confined to the objectively ascertainable question whether a reasonably well trained officer would have *known* that the search was illegal despite the magistrate's authorization." (*Leon, supra,* 468 U.S. at p. 922, fn. 23 [82 L.Ed.2d at p. 698], italics added.) The court then described four situations in which suppression would remain an appropriate remedy. The third situation —urged by defendant in this case—provides as follows:

"Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' *Brown* v. *Illinois* [(1975)], 422 U.S. [590], 610-611 [45 L.Ed.2d 416, 95 S.Ct. 2254] (Powell, J., concurring in part); see *Illinois* v. *Gates, supra,* 462 U.S. at [pages] 263-264 (White, J., concurring in judgment)." (*Leon, supra,* 468 U.S. at p. 923 [82 L.Ed.2d at p. 699].)[1]

The *Leon* court concluded by observing that none of the four situations in which exclusion remains the appropriate remedy pertained on the facts before it. Although the defendant asserted that no reasonable and well-trained officer "could have believed that there existed probable cause" for the search (468 U.S. at p. 926 [82 L.Ed.2d at p. 701]), the high court rejected that claim, observing that the searching officer had submitted to the magistrate "much more than a 'bare bones' affidavit. The affidavit related the results of an extensive investigation and . . . provided evidence sufficient to create disagreement . . . as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." (*Ibid.*)

Subsequent developments in *Malley* v. *Briggs* (1986) 475 U.S. 335 [89 L.Ed.2d 271, 106 S.Ct. 1092] (*Malley*), a civil rights action (42 U.S.C. § 1983) also authored by Justice White, illuminate *Leon.* In *Malley* the plaintiff sued a state trooper for violating his civil rights by improperly

---

[1]*Brown* v. *Illinois* (1975) 422 U.S. 590 [45 L.Ed.2d 416, 95 S.Ct. 2254], from which the *Leon* court borrowed its "third situation" language, involved suppression of statements made in custody following an illegal arrest. The court concluded that the initial taint of the illegal arrest had not been attenuated by a warning under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and that the prosecution had failed in its burden of showing the statements were the product of free will untainted by the initial violation. Justice Powell wrote in a concurrence that he would remand the matter to permit the trial court to decide if the prosecution had adequately met its burden of proof. He suggested that although "flagrant" police violations of the Fourth Amendment could rarely be attenuated by *Miranda* warnings, mere "technical" violations of the Fourth Amendment generally would be so cured. He described "flagrantly abusive" Fourth Amendment violations as including the situation in which "the factors relied on by the police in determining to make the arrest were so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable . . . ." (422 U.S. at pp. 610-611 [45 L.Ed.2d at p. 431].)

applying for an arrest warrant that was subsequently erroneously issued, and thereafter executed. The trooper, asserting "qualified immunity," claimed he was "shielded from damages liability because the act of applying for a warrant is *per se* objectively reasonable, provided that the officer believes that the facts alleged in his affidavit are true." (*Malley, supra,* 475 U.S. at p. 345 [89 L.Ed.2d at p. 281], italics added.) The trooper insisted he was "entitled to rely on the judgment of a judicial officer in finding that probable cause exists and hence issuing the warrant." (*Ibid.*) The court, however, rejected this argument. It held, *"the same standard of objective reasonableness that we applied in the context of a suppression hearing in Leon, supra,* defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest" (*id.,* at p. 344 [89 L.Ed.2d at p. 280], italics added), and concluded the trooper's view "is at odds with . . . *Leon.*" (*Id.,* at p. 345 [89 L.Ed.2d at p. 281], italics added.)

The court explained that pursuant to *Leon,* the question to be addressed "is whether a reasonably well-trained officer in [the trooper's] position *would have known* that his *affidavit failed to establish probable cause* and that *he should not have applied for the warrant.* If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. *We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.*" (*Malley, supra,* 475 U.S. at pp. 345-346 [89 L.Ed.2d at p. 281], italics added, fns. omitted; see also *id.,* p. 346, fn. 9 [89 L.Ed.2d at p. 281] [if magistrate issues warrant when no officer of reasonable competence would have sought warrant, "The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate."].)

## C.  *Interpreting Leon*

Our Courts of Appeal, like the appellate courts of other states and the federal appellate courts, have expressed confusion in attempting to apply *Leon, supra,* 468 U.S. 897. For example, some courts appear to conclude that in determining whether an officer was objectively reasonable in submitting an affidavit to a magistrate, it is proper to consider the fact that the magistrate signed (albeit erroneously) the warrant. (*People v. Brown* (1990) 231 Cal.App.3d 1201 [274 Cal.Rptr. 432], review granted Jan. 4, 1991 (S018256) [magistrate's issuance of warrant is a factor in determining

whether objectively reasonable officer would have submitted affidavit to magistrate].)[2]

Other courts have held otherwise. ■ *People* v. *Maestas* (1988) 204 Cal.App.3d 1208 [252 Cal.Rptr. 739] concludes that the objective reasonableness of an officer's decision to apply for a warrant must be judged based on the affidavit and the evidence of probable cause contained therein and known to the officer, "and without consideration of the fact that the magistrate accepted the affidavit." *(Id.,* at p. 1214.)[3]

On this point, we agree with *Maestas, supra,* 204 Cal.App.3d 1208. The fact that a magistrate has issued a warrant—in other words, the fact that an officer sought and obtained advance judicial approval for the search—is what caused the high court to establish the *Leon* exception in the first place. By definition, in *every* case in which the prosecution seeks the benefit of *Leon,* a magistrate has issued a warrant; issuance of the warrant defines the class of cases eligible for nonexclusion under the *Leon* rule. Because issuance of a warrant is a constant factor in these cases, it cannot logically serve to distinguish among them. Moreover, it is clear that the high court does not intend the issuance of a warrant to be a consideration under *Leon.*[4] We thus conclude that in determining whether a case is within the third *Leon* situation, the fact that the warrant issued is of no significance.[5]

■ *Maestas, supra,* 204 Cal.App.3d 1208, 1217, 1218, also correctly articulates the test by which the "objective reasonableness" of an officer's decision to submit an affidavit to a magistrate is to be judged: The test, which was initially formed in *Leon, supra,* 468 U.S. at pages 919-926 [82 L.Ed.2d at pages 696-701], and which was subsequently articulated clearly in *Malley, supra,* 475 U.S. at page 345 [89 L.Ed.2d at page 281], is whether

[2]See also, e.g., *U.S.* v. *Corral-Corral* (10th Cir. 1990) 899 F.2d 927, in which the court stated, "police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for *either seeking or* executing a warrant." *(Id.,* at p. 939, italics added.)

[3]Accord, 1 LaFave, Search and Seizure (2d ed. 1987) section 1.3(f), pages 76-77 (the reasonableness of an officer's decision to seek a warrant "is to be judged as of the time of warrant application and thus without consideration of the fact that the magistrate thereafter acted favorably upon the affidavit presented").

[4]The *Leon* court carefully articulated·a rule that focuses exclusively on *the officer's decision to submit an affidavit to a magistrate* (see *Leon, supra,* 468 U.S. at p. 923 [82 L.Ed.2d at pp. 698-699], quoted *ante,* at pp. 602-603), and it thereafter reemphasized that singular focus in *Malley, supra,* 475 U.S. 335, 345 [89 L.Ed.2d at pp. 281] (quoted *ante,* at p. 604).

[5]It is, of course, proper to consider under the third *Leon* situation whether the affidavit was previously rejected by other magistrates (see *Leon, supra,* 468 U.S. at pp. 922-923, fn. 23 [82 L.Ed.2d at pp. 698-699] [expressly authorizing consideration of such circumstances]), and whether the affidavit was previously reviewed by a deputy district attorney (see *U.S.* v. *Freitas* (9th Cir. 1988) 856 F.2d 1430-1432).

a reasonable and well-trained officer "would have *known* that his affidavit failed to establish probable cause and that he should not have applied for the warrant." (*Ibid.*, italics added, fn. omitted.) But if such an officer would not reasonably have known that the affidavit (and any other supporting evidence) failed to establish probable cause, there is no reason to apply the exclusionary rule, because there has been no objectively unreasonable police conduct requiring deterrence. (*Leon, supra,* 468 U.S. at p. 919 [82 L.Ed.2d at p. 696].) An officer in this latter situation will be permitted to rely on the warrant, and *Leon*'s general rule of nonexclusion will apply, unless one of *Leon*'s other limited "exclusion" situations is triggered.

### D. *Application to the facts*

■ We conclude on these facts that a well-trained officer reasonably could have believed that the affidavit presented a close or debatable question on the issue of probable cause. (See *U.S.* v. *Martin* (8th Cir. 1987) 833 F.2d 752, 755; *U.S.* v. *Corral-Corral, supra,* 899 F.2d at p. 939.) Thus it cannot be said that Detective Addoms should have *known* that his affidavit failed to establish probable cause (and hence that he should not have sought a warrant).

It is true, as the majority in the Court of Appeal noted below, that a reasonable officer might have undertaken additional investigation to augment the affidavit before submitting it to the magistrate. The question under *Leon, supra,* 468 U.S. 879, however, is not whether further investigation would have been reasonable, but whether a reasonable officer in Addoms's position would have *known* that the affidavit, as it existed at the time it was to be presented to the magistrate, was legally insufficient without additional and more recent corroboration.[6]

We cannot say that an objective and reasonable officer would have "known" this affidavit failed to establish probable cause. It is plain from the affidavit that Addoms conducted more than a mere "bare bones" investigation (see *Gates, supra,* 462 U.S. at p. 239 [76 L.Ed.2d at p. 548-549]; *Leon, supra,* 468 U.S. at p. 926 [82 L.Ed.2d at p. 700-701]). He obtained substantial corroborating information that, although stale, was sufficient to make the probable cause determination a close question for any objectively reasonable and well-trained officer, and, indeed, for reasonable judicial officers as well (*Leon, supra,* 468 U.S. at p. 926 [82 L.Ed.2d at p. 700-701] [affidavit "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause"]). Addoms thereafter

---

[6]In this regard, *People* v. *Johnson* (1990) 220 Cal.App.3d 742, 750-751 [270 Cal.Rptr. 70], is disapproved to the extent it may be read to require an officer to exhaust all avenues of investigation and corroboration at the risk of falling within *Leon*'s third situation.

submitted the affidavit to a deputy district attorney, who approved it. Under these circumstances, we conclude Addoms acted reasonably when he took this affidavit to a judicial officer for determination. His subsequent reliance on the warrant that was issued was thus objectively reasonable under *Leon*, and suppression of the evidence is not required.

## IV.  *Conclusion*

The judgment of the Court of Appeal is reversed.[7]

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I dissent.

The Fourth Amendment to the United States Constitution declares that "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Separately and independently, section 13 of article I of the California Constitution (hereafter article I, section 13) makes a similar declaration: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

Under a rule of exclusion, evidence obtained in violation of the Fourth Amendment is inadmissible. (E.g., *Weeks* v. *United States* (1914) 232 U.S.

---

[7]As noted above (*ante*, p. 599), the magistrate suppressed some of the evidence seized on the ground the warrant was overbroad in certain respects. Based on this, defendant repeats verbatim a claim he advanced in the Court of Appeal, to the effect that all of the evidence seized must be suppressed because under *Leon, supra*, 468 U.S. 897, there can be no reasonable reliance on a warrant that is facially overbroad in part. The Court of Appeal declined to address this point. Accordingly, the issue is not properly before us.

In any event, on the merits, we would reject the claim. As the People pointed out in their brief below, and as they repeat in their reply brief in this court, none of the three cases on which defendant relies supports his view, and two expressly hold otherwise. The court in *People* v. *Holmsen* (1985) 173 Cal.App.3d 1045, 1048 [219 Cal.Rptr. 598], stated: "Even when a warrant is overbroad *in part*, evidence will not be suppressed if it was seized pursuant to a portion of the warrant which was *not*." (*Id*. at p. 1048, italics in original.) Similarly, the court in *United States* v. *Washington* (9th Cir. 1986) 797 F.2d 1461, 1473, ordered suppression under *Leon, supra*, 468 U.S. 897, 923 [82 L.Ed.2d 677, 698-699], of evidence that was seized in reliance on facially overbroad sections of a warrant, but observed that "[evidence] seized pursuant to valid portions of a warrant need not be suppressed."

383, 389-398 [58 L.Ed. 652, 654-658, 34 S.Ct. 341] [federal prosecutions]; *Mapp* v. *Ohio* (1961) 367 U.S. 643, 646-660 [6 L.Ed.2d 1081, 1084-1093, 81 S.Ct. 1684, 84 A.L.R.2d 933] [state prosecutions].)

Under a similar rule, evidence obtained in violation of article I, section 13, is similarly inadmissible. (E.g., *People* v. *Cahan* (1955) 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513] [decided under the substantially identical former § 19 of art. I of Cal. Const.].)

In *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405] (hereafter sometimes *Leon*), the United States Supreme Court fabricated an exception to the exclusionary rule of the Fourth Amendment that allows "the use in the prosecution's case in chief of evidence obtained by officers acting in [objectively] reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." (*Id.* at p. 900 [82 L.Ed.2d at p.684].) The court declared the exception inapplicable when (1) the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth"; (2) the magistrate "wholly abandoned his judicial role"; (3) the affidavit is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[ ]' "; or (4) the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." (*Id.* at p. 923 [82 L.Ed.2d at p. 699].)

In *In re Lance W.* (1985) 37 Cal.3d 873, 884-893 [210 Cal.Rptr. 631, 694 P.2d 744], by a vote of four to three, a majority of this court effectively abrogated the exclusionary rule of article I, section 13. What remains is the exclusionary rule of the Fourth Amendment—and with it, the *Leon* exception.

It has been manifest from the very day on which it was handed down that *Leon* was wrongly decided.

The dissenting opinions in *Leon* authored by Justice Brennan and Justice Stevens are each irrefutable. (468 U.S. at pp. 928-960 [82 L.Ed.2d at pp. 722-736] (dis. opn. of Brennan, J.); *id.* at pp. 960-980 [82 L.Ed.2d at pp. 702-723] (dis. opn. of Stevens, J.).)

Also, commentators have time and again demonstrated *Leon*'s fatal flaws. (E.g., 1 LaFave, Search & Seizure (2d ed. 1987) § 1.3, pp. 46-80, and the commentary cited therein; Duke, *Making Leon Worse* (1986) 95 Yale L.J. 1405, 1405 [". . . Leon is one of the weakest of the Court's criminal procedure opinions."].)

Even more significant, the courts of several of our sister states—including high courts of the first rank—have criticized *Leon*'s rationale on its own terms and have refused to adopt its holding under their own constitutions. (E.g., *State* v. *Marsala* (1990) 216 Conn. 150, 151, 159-171 [579 A.2d 58]; *State* v. *Novembrino* (1987) 105 N.J. 95, 99-102, 129-159 [519 A.2d 820]; *People* v. *Bigelow* (1985) 66 N.Y.2d 417, 426-427 [497 N.Y.S.2d 630, 488 N.E.2d. 451]; *State* v. *Carter* (1988) 322 N.C. 709, 710, 712-724 [370 S.E.2d. 553]; *Commonwealth* v. *Edmunds* (1991) 526 Pa. 374, 376, 382-412 [586 A.2d 887, 888, 891-906].)

Today, the *Leon* exception survives under the exclusionary rule of the Fourth Amendment only because its source is authoritative: its reasoning has been shown to be empty. It remains vital in California only by dint of the plainly erroneous decision of a bare majority of this court in *In re Lance W., supra,* 37 Cal.3d 873.

I am confident that some day soon, the United States Supreme Court will reconsider and overrule *Leon.* Recently, in *Payne* v. *Tennessee* (1991) 501 U.S. __ , __-__ [115 L.Ed.2d 720, 730-379, 111 S.Ct. 2597, 2604-2611], it did just that (in large part) to *Booth* v. *Maryland* (1987) 482 U.S. 496 [96 L.Ed.2d 440, 107 S.Ct. 2529], and *South Carolina* v. *Gathers* (1989) 490 U.S. 805 [104 L.Ed.2d 876, 109 S.Ct. 2207]—decisions that had drawn attacks that were far fewer, far weaker, and far less justified. If the court did not hesitate to dispatch *Booth* and *Gathers,* surely it should give *Leon* its quietus as well.

But until *Leon* is overruled, it continues to govern. Accordingly, the question before the court must be addressed under its shadow.

The first issue, of course, is whether the search of defendant's home and the seizure of items therefrom were violative of his rights under the Fourth Amendment and/or article I, section 13. Both the superior court and the Court of Appeal resolved the matter in the affirmative, expressly as to the federal guaranty and impliedly as to the state. I agree.

Detective John F. Addoms of the Placer County Sheriff's office and other law enforcement agents conducted the search and seizure. They did indeed have a search warrant. But probable cause was lacking. The warrant was supported solely by an affidavit executed by Addoms. The affidavit was insufficient. In a telephone conversation with Addoms, an anonymous and untested female tipster made an accusation that defendant was currently engaged in the sale of cocaine in Tahoe City both at his home and at an establishment where he tended bar. The facts she stated revealed she was personally acquainted with defendant. (The record suggests she was a former

lover.) But they did not show much more. Certainly, there was no claim she herself had recently bought cocaine from defendant or had even witnessed a sale. All that appears in this regard is the hearsay assertion that a relative had lately told her that he had made such a purchase. Addoms's corroboration of the tip was devoted in large part to an investigation of defendant's identity and address. His purported corroboration of the accusation proper was limited to a 15-month-old statement from a confidential and untested tipster and a 3½-year-old crime report.

The majority claim that the presence of probable cause is a close question. I disagree. There was a bare accusation by an anonymous and untested tipster that defendant was then selling cocaine. There was no effective corroboration. The 15-month-old statement from the confidential and untested tipster and the 3½-year-old crime report were stale. They may each have had some tendency to substantiate an allegation made contemporaneously therewith. But whether considered separately or together, they were insufficient to support the charge here. Certainly, this was not a case in which investigation into the tip was precluded by time or circumstances. There was no emergency. The suspected criminal activity did not demand immediate action. Neither did defendant's status—he was a longtime resident and homeowner. Further, there was no bar to the gathering of evidence. Law enforcement officers from outside the environs of Tahoe City could readily have conducted surveillance. Such officers would have attracted little attention to themselves: strangers are common in this popular resort area at all times of the year.

The second issue to be considered here is whether the evidence comprising the items unconstitutionally seized from defendant's home came within the exclusionary rule of the Fourth Amendment or outside its ambit in the *Leon* exception. The superior court allowed the exception, refused suppression, and subsequently entered a judgment against defendant on his plea of guilty. The Court of Appeal applied the rule and proceeded to reverse. I agree with the Court of Appeal.

As explained, the items seized from defendant's home were obtained in violation of his rights under the Fourth Amendment and article I, section 13. It cannot be said that Detective Addoms and his companions acted "in [objectively] reasonable reliance" on the search warrant. (*United States* v. *Leon, supra*, 468 U.S. at p. 900 [82 L.Ed.2d at p. 684].) It must have been manifest even—and perhaps, especially—to a "reasonably well trained officer" (*id.* at p. 922, fn. 23 [82 L.Ed.2d at p. 922]) that probable cause was lacking. The affidavit revealed little more than a bare, and uncorroborated, accusation by an anonymous and untested tipster that defendant was then selling cocaine. That a deputy district attorney subsequently "reviewed" and

"approved" the document did not, and could not, make up for what was absent. Accordingly, the *Leon* exception was inapplicable. The affidavit was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " (*Id.* at p. 923 [82 L.Ed.2d at p. 922].)

The majority conclude to the contrary. Their reasoning rests at bottom on their claim that the presence of probable cause is a close question. As I have shown, that assertion is unsupported.

In short, "When constitutional rights are implicated, the end cannot justify the means." (*In re Lance W., supra,* 37 Cal.3d at p. 910 (dis. opn. of Mosk, J.).)

For the reasons stated above, I would affirm the judgment of the Court of Appeal.

Appellant's petition for a rehearing was denied December 19, 1991, and the opinion was modified to read as printed above. Mosk, J., was of the opinion that the petition should be granted.