Filed 1/23/14 P. v. Fleming CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>BRIAN CHRISTOPHER FLEMING,<br><br>      Defendant and Appellant. | A138213<br><br>(Humboldt County<br>Super. Ct. Nos. CR1105355,<br>  CR1202460, CR1202705) |

Defendant Brian Christopher Fleming pleaded guilty to the felony offenses of sale or transportation of a controlled substance (Health & Saf. § 11379, subd. (a)) (two counts), and possession of a controlled substance for sale (Health & Saf. § 11378) (one count). He also admitted he had previously served a prison term for a felony conviction (Pen. Code, § 667.5, subd. (b)), and was released on his own recognizance in two different cases when he was arrested for the current offenses (Pen. Code, § 12022.1). The court sentenced Fleming to an aggregate term of ten years and eight months: three years to be served in county jail followed by seven years and eight months of mandatory supervision by the probation department. (Pen. Code, § 1170, subd.(h)(5)(B).) On appeal, Fleming challenges the trial court's denial of his motion to quash a May 22, 2012, search warrant and suppress the evidence seized under that warrant. We affirm the judgments.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Because the sole question before us is whether the trial court erred in denying Fleming's motion to quash a May 22, 2012 search warrant and suppress evidence seized under that warrant, we set forth only those facts necessary to resolve this issue.

### A.      Issuance and Execution of Search Warrant

On May 22, 2012, a magistrate issued a warrant authorizing a search of Fleming's person, three residences used by Fleming and his mother, and two vehicles registered in the name of Fleming's mother, for several items including methamphetamine and any other controlled substances and drug paraphernalia and firearms. The warrant was based on the affidavit of the same date by Eureka Police Department Detective Gary Cooper. The affidavit described information that the officer had learned about Fleming's 2004 drug activities and his arrest for sale and transportation of controlled substances that same year, and Fleming's December 2011 arrest for possession of a controlled substance for sale and being a convicted felon in possession of a taser and a firearm after his detention and a search of a hotel room rented to Fleming.

Detective Cooper also received information from other police officers that on April 15, 2012, a confidential informant (CI) had gone to Fleming's current residence and purchased methamphetamine. The CI had known Fleming for several years and gone to his residence on dozens of occasions during the past year and purchased an "eight-ball" (about 3.5 grams of methamphetamine) each time. The CI described how Fleming used a detached building on his mother's property for methamphetamine sales. The methamphetamine was in a cupboard or some type of safe-like box in an area a few feet into the building. The CI reported that the bulk of the methamphetamine (currently one-half pound) was kept in some type of bag or box under the residence of Fleming's mother. The CI was an on-again/off-again user of methamphetamine for about 20 years. The CI had been arrested and convicted for drug-related offenses. The CI was trying to live a clean and sober lifestyle, but it was difficult because Fleming provided methamphetamine at such a low price. The CI believed that if Fleming was no longer selling methamphetamine, it would be easier for the CI to stop using methamphetamine.

The CI understood that no promises of consideration for any pending criminal charges, and no deals of any kind would be made as a result of the information the CI provided to the police.

Ten days later, on April 25, 2012, Detective Cooper and the CI drove by three Fleming residences. According to the CI, one residence belonged to Fleming's mother and the two nearby residences belonged to Fleming who lived in one of the them. The CI again stated that Fleming kept some of his methamphetamine underneath his mother's house, and that behind one of Fleming's houses there was a shed where Fleming kept his methamphetamine and scales used to measure the methamphetamine for sale. On May 1, 2012, Detective Cooper learned that according to the county assessor's records all three residences were listed as owned by Fleming's mother.

Detective Cooper also included in his warrant information that during the middle of May 2012, Fleming was seen in a car registered to a woman whose family members were involved in trafficking methamphetamine and heroin and on a different occasion a known methamphetamine dealer was seen near a car in the driveway of one of the Fleming residences. On the day Detective Cooper applied for the warrant, the officer observed Fleming driving one of his cars into the driveway of one of the Fleming residences.

Two days after the issuance of the search warrant, on May 24, 2012, Detective Cooper and other officers executed the warrant. Fleming was stopped after he was seen driving one of the vehicles listed in the warrant. A search of the vehicle disclosed a pistol, about two ounces of methamphetamine, and a black plastic case with a syringe and a small amount of methamphetamine. In a locked room in one of the Fleming residences, Detective Cooper found a gun safe containing several firearms. In a detached garage at another Fleming residence, the officer found over 52 grams of methamphetamine in a white PVC pipe, plastic baggies, a digital scale, a triple-beam scale, a 12-gauge shotgun, and documents with Fleming's name on them.

**B.      Hearing on Motion to Quash May 22, 2012 Search Warrant and Suppress Evidence Seized Under the Warrant**

Fleming's motion to quash the May 22, 2012 search warrant and suppress evidence seized under the warrant was submitted on his written motion papers and the preliminary hearing transcripts related to the charges filed against Fleming. The prosecution supplemented the record with testimony from two hotel employees who testified regarding the December 2011 incident.

Fleming argued that in December 2011 the police had no probable cause to search either his hotel room or the room safe. He further argued that because the information gained during the search of his hotel room was used in part to secure the search warrant issued on May 22, 2012, the evidence found during the execution of that warrant should be suppressed as the fruit of the poisonous tree. The prosecution opposed Fleming's requests, arguing the police had probable cause to search Fleming's hotel room and the room safe in December 2011.

The trial court denied Fleming's motion to suppress the evidence seized after his detention and search of his hotel room and room safe in December 2011. The court also denied Fleming's motion to quash the May 22, 2012, search warrant and suppress the evidence seized under that warrant. The court found Detective Cooper's reference in his affidavit to the search of Fleming's hotel room in December 2011 was made "in a very collateral sense," and the affidavit contained "updat[ed] information" that pertained to Fleming's more recent alleged activity. So that even if the December 2011 police conduct was found to be unlawful, the May 22, 2012, search warrant would still be valid.

## DISCUSSION

Fleming's appeal poses one question for our resolution. He argues that his motion to quash the May 22, 2012, search warrant and suppress the evidence seized under that warrant should have been granted because the CI's information regarding drug sales at the Fleming residences was stale as a matter of law.[1] We disagree, and conclude that the

---

[1]     We recognize that in the trial court Fleming made no argument that the CI's information was stale to support the issuance of the May 22, 2012, search warrant.

CI's information was not too stale as a matter of law to support the issuance of the May 22, 2012 search warrant.

"The magistrate's order issuing a search warrant may be set aside only if the affidavit, as a matter of law, does not establish probable cause. [Citation.] '[P]robable cause for a search exists where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched.' " (*People v. Kershaw* (1983) 147 Cal.App.3d 750, 760.) "The freshness of the information on the basis of which a warrant is sought and obtained, is one of the factors which determine whether there is probable cause to believe that the articles covered by the warrant will be found at the place that is to be searched." (*People v. Hernandez* (1974) 43 Cal.App.3d 581, 586.) "No clear cut rule, of course, tells us when the time span must be deemed too attenuated. 'The length of the time lapse alone is not controlling since even a brief delay may preclude an inference of probable cause in some circumstances while in others a relatively long delay may not do so." (*Alexander v. Superior Court* (1973) 9 Cal.3d 387, 393 (*Alexander*).) While " 'there are obviously some limits' " (*ibid.*), "where there is evidence of an activity continuing over a lengthy period of time [citation] or the nature of the activity is such as to justify the inference that it will continue until the time of the search [citation] much longer periods between the gathering of information and application for a warrant [are] reasonable." (*People v. Reed* (1981) 121 Cal.App.3d Supp. 26, 34.) In this case we conclude the CI's information, including sales of methamphetamine at Fleming's residence for more than a year and as late as 37 days (April 15 to May 22) before the issuance of the warrant, was sufficiently current for the magistrate to reasonably consider that information in making the probable cause determination even in the absence of more recent transactions at the Fleming residences. (*Alexander, supra*, 9 Cal.3d at p. 393.)

---

However, we shall consider his argument as one challenging the use of such information as a matter of law.

Additionally, even assuming the CI's information was stale, we conclude Detective Cooper "reasonably relied on the magistrate's issuance of the warrant, and thus it would be improper to suppress the evidence." (*People v. Camarella* (1991) 54 Cal.3d 592, 596-597 (*Camarella*).) As the court explained in *People v. Mikesell* (1996) 46 Cal.App.4th 1711, 1719, *Camarella* "guides our decision. In [that case,] police officers received a call from an anonymous informant who said she used to purchase her cocaine from the defendant. While she no longer used cocaine, a relative of hers did and was currently buying from the defendant. The caller stated defendant's place of business and his approximate residence. ([*Camarella,* at p. 597.]) [¶] The officer who applied for the warrant then checked his records and discovered that about nine months earlier, a CI had spoken to the officer and stated that the CI had recently purchased cocaine from Camarella. A record check showed that about three years earlier, Camarella had been arrested for possession of cocaine with 'pay/owe' sheets recording probable drug sales in his possession. ([*Camarella,* at p. 598.]) The only additional investigation taken prior to serving the warrant was to verify Camarella's address. There was no recent observation of heavy traffic to and from Camarella's residence. [¶] The California Supreme Court reviewed the facts and made the following determination: [¶] 'We cannot say that an objective and reasonable officer would have "known" this affidavit failed to establish probable cause. It is plain from the affidavit that [the officer] conducted more than a mere 'bare bones' investigation. [Citations.] He obtained substantial corroborating information that, *although stale*, was sufficient to make the probable cause determination a close question for any objectively reasonable and well-trained officer[.]' ([*Camarella,*] at p. 606, italics added.)"

So, too, in this case, given Fleming's history of drug dealing and the CI's information regarding the drug transactions at Fleming's residences during the past year and as late as 37 days before the issuance of the warrant, a reasonable officer in Detective Cooper's position would not have "*known* that the affidavit, as it existed at the time it was presented to the magistrate, was legally insufficient without additional and more recent corroboration." (*Camarella, supra*, 54 Cal.3d at p. 606.) "When a police

6

investigation relates to a continuing criminal business, rather than a completed act, courts will permit greater lapses of time between the dates of the activities described in the affidavit and the date of the warrant request. [Citation.] The rationale for this temporal leniency is that criminal entrepreneurs, much like their legitimate counterparts, likely will retain the equipment and capital of their enterprise for a long period of time. [Citation.] Thus, evidence of a criminal business operating at a particular location in the not-so-distant past may reasonably give rise to a belief that a search of the location would yield further evidence. [Citations.] So, at least, [Detective Cooper] reasonably could have believed in relying on the warrant." (*United States v. Fisher* (9th Cir. 1998) 137 F.3d 1158, 1164; see *United States v. Leon* (1984) 468 U.S. 897, 926 ["application of the extreme sanction of exclusion [of evidence] is inappropriate" where "officers' reliance on the magistrate's determination of probable cause was objectively reasonable"].) [2]

---

[2] Fleming's reliance on *People v. Hulland* (2003) 110 Cal.App.4th 1646 is misplaced. In that case, the appellate court found that a search warrant for Hulland's residences in Los Angeles was not supported by probable cause because it was based on a police officer's single purchase of marijuana from the defendant in a parking lot in Pasadena some 52 days before the officer sought the warrant. (*Id*. at pp. 1648, 1653.) In support of the warrant, the officer did not offer any evidence that Hulland ever sold marijuana before or subsequent to the controlled buy, or that he ever sold drugs out of his residences. (*Id*. at p. 1655.) In concluding the police officer should have known his affidavit was insufficient, the court ruled: "Although probable cause has been found to exist when a search warrant issues shortly after a drug transaction, the hiatus between the sale and the search in the instant matter evidences a lack of probable cause to search absent additional factors, such as proof of ongoing transactions, suspicious activity at the premises to be searched, or other evidence indicating ongoing criminal activity. No such proof was presented here. In other words, no reasonable officer would have believed that the information offered in support of the warrant consisted of ' " 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.' " [Citation.]' " (*Ibid*.)

## DISPOSITION

The judgments are affirmed.

 

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Siggins, J.