[No. A038035. First Dist., Div. Two. Aug. 22, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
LEROY LARRY MAESTAS, Defendant and Appellant.

## COUNSEL

Thomas L. Gill and Favaro, Lavezzo, Gill, Caretti & Heppell for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Catherine A. Rivlin, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.**—Following a plea of no contest to one count of possession for sale of a controlled substance (Health & Saf. Code, § 11351) Leroy Maestas appeals from a judgment of conviction, claiming that his motion to suppress evidence pursuant to Penal Code section 1538.5[1] was erroneously denied.

On January 2, 1986, a search warrant was issued by a municipal court magistrate upon an affidavit application by Détective Phillip Silva of the Vallejo Police Department. The warrant authorized the search of defendant's bar, Jenica's Lounge, and his residence for cocaine, drug paraphernalia, and personal property tending to show the identity of the persons in control of the premises being searched, including bank records, tax records, bank books and other receipts.

The search warrant was executed on January 10, 1986. Cocaine, plastic baggies, bank papers, IRS forms and other items were seized from defendant's home. Nothing was found in Jenica's Lounge.

Defendant filed a motion to traverse and quash the search warrant and to suppress all evidence seized as a result of its issuance. As pertinent to this

---

[1] All further statutory references are to the Penal Code.

appeal, the motion argued that (1) reckless material omissions of fact and misstatements of fact contained in the affidavit should void the warrant; (2) the warrant was invalid in that the supporting affidavit did not supply sufficient facts to establish probable cause; and (3) the officers did not act in objective, good-faith reliance on the warrant.

Officer Silva's affidavit set forth the following information: In 1982, Charles Macklin told Vallejo police that defendant sold cocaine from his business, the Top Hat Club. Although the police went with Macklin to the Top Hat Club, they were unable to purchase cocaine from defendant. Nearly four years later, on Christmas Eve, 1985, Nina Giannini was arrested for possession of methamphetamine and told police that she could buy cocaine from defendant, that he had been selling it for years and that she had purchased some from him in the past. On the same day, police wired Giannini, provided her with money and sent her into Jenica's Lounge to purchase cocaine from defendant. Defendant told Giannini his shipment would not arrive until after the holiday and said he might be able to supply her with a sample on December 27, 1985. Giannini never returned to consummate the purchase. Officer Silva is an experienced narcotics officer and believed that "It is obvious from this information that Leroy Maestas maintains an ongoing cocaine distributorship."

Defendant argued that the affidavit contained misstatements and omissions of material facts, in that Officer Silva failed to inform the magistrate that Macklin had suffered four previous felony convictions; that Giannini had been arrested for auto burglary in addition to possession of methamphetamine; that it was Officer Silva who first brought up defendant's name to Giannini;[2] and that not only did Giannini fail to show up on December 27, so did defendant.

Defendant also claimed there were several significant inconsistencies between the affidavit and the tape recording of Giannini's conversation with defendant. For instance, contrary to the statement in Silva's affidavit that Giannini said she had purchased from defendant in the past, the tape of Giannini's contact with defendant contained the statement by Giannini: "I *heard* your shit was real good." Also, whereas the affidavit stated "Leroy said he would provide the sample on Friday, [December 27, 1985]," the tape of the conversation revealed that when Giannini asked defendant for

---

[2] Defense counsel's declaration in support of his argument regarding omissions and misstatements also states: "I am informed and believe and thereon allege that Giannini never told Silva she had purchased from Maestas in the past. Silva's report states: 'We asked if she could buy drugs from Leroy Maestas. Nina Giannini stated she believed she could buy from Leroy because he uses such a great quantity and that he's burned out. That he would pretty much sell to almost anyone.' "

cocaine, he had actually stated he "ain't got shit," and then "maybe after Christmas." Moreover, it appears that it was Giannini, not defendant, who suggested that she return on Friday.

Defendant additionally maintained that the affidavit was insufficient on its face because the Macklin information, which was four years old, was stale and unreliable; the Giannini information about purchasing from defendant "in the past" was stale; neither informant was shown to be reliable since, among other things, both failed in their attempts to buy cocaine from defendant; and neither informant's information was corroborated.

The suppression hearing consisted solely of the playing of the tape and the arguments of counsel. At the conclusion of the hearing the trial court found that the affidavit did not constitute probable cause for issuing a search warrant: "There's got to be some reason to believe that this man will be in possession of drugs or that drugs will be located in a certain location on the date that the search warrant is signed. . . . But there's nothing here that makes it all that reasonable that this person is going to have it on January 2nd at their house or at their bar on their person." The court also found that Giannini was not a reliable informant and that misstatements and omissions in the affidavit did not relate to material facts.

After concluding that the affidavit did not establish probable cause the court agreed to conduct a hearing on the question whether the officers relied in good faith upon the warrant within the meaning of *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]. Over defendant's objection, the court limited the inquiry into good faith to "an analysis of the content of the search warrant affidavit, the Magistrate's actions, and perhaps what transpired at the time a search warrant was signed." At the conclusion of the hearing the court ruled that Officer Silva acted in good faith reliance on the warrant and denied the motion to suppress.

On appeal defendant contends that the evidence received by the court was insufficient to show objective good faith reliance on an invalid warrant and that the trial court erred in limiting the scope of the evidentiary hearing.

I.

In *United States* v. *Leon, supra,* 468 U.S. 897, the Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." (*Id.,* at p. 922 [82 L.Ed.2d at p. 698].) Consequently, the high court held

that the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid. (*Id.*, at pp. 922-932 [82 L.Ed.2d at pp. 698-699].)

■ The *Leon* court recognized that suppression would remain an appropriate remedy in four situations: (1) if the affiant misled the magistrate or judge with information that the affiant knew or should have known was false; (2) if the magistrate wholly abandoned his judicial function; (3) if the warrant was based on an affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' "; and (4) if the warrant itself is facially deficient in particularizing the place to be searched and the things to be seized. (*United States* v. *Leon, supra,* 468 U.S. at p. 923 [82 L.Ed.2d at p. 699], quoting *Brown* v. *Illinois* (1975) 422 U.S. 590, 610-611 [45 L.Ed.2d 416, 431, 95 S.Ct. 2254].) *Leon* instructs that suppression is still the proper remedy "if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." (*Id.*, at p. 926 [82 L.Ed.2d at p. 701].)

■ Though there is language in *Leon* suggesting that in evaluating the good faith of an officer it is proper to consider that the magistrate agreed with his assessment of probable cause,[3] *Malley* v. *Briggs* (1986) 475 U.S. 335 [89 L.Ed.2d 271, 106 S.Ct. 1092] establishes that objective reasonableness must be judged as of the time the warrant is sought and without consideration of the fact that the magistrate accepted the affidavit. *Malley* was a federal civil rights action (see 42 U.S.C. § 1983) against a state trooper and the State of Rhode Island alleging that the trooper, in applying for warrants to arrest plaintiffs, violated their rights under the Fourth and Fourteenth Amendments. The *Malley* court held "that the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon, supra,* defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest." (475 U.S. at p. 344 [89 L.Ed.2d at p. 280], fn. omitted.) The state trooper's claim "that he [was] entitled to rely on the judgment of a judicial officer in finding that probable cause exists and hence issuing the warrant" was rejected because it was at odds with the concept of objective reasonableness developed in *Leon* and the earlier opinion in *Harlow* v. *Fitzgerald* (1982) 457 U.S. 800 [73 L.Ed.2d 396, 102 S.Ct. 2727]. Writing for the majority in *Malley,* as

---

[3] Particularly the statements that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . ." (*Leon, supra,* at p. 921 [82 L.Ed.2d at p. 697]) and that the good faith inquiry should be confined to the question "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." (*Id.*, at p. 922, fn. 23, [82 L.Ed.2d at p. 698].)

he did in *Leon,* Justice White declared that the question that must be addressed "is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment." (475 U.S. at pp. 345-346 [89 L.Ed.2d at p. 281], fns. omitted.)

*Malley's* point that the magistrate's approval of the warrant application should not influence the assessment whether a warrant application was made in good faith is fully consistent with *Leon.* As Justice White stated in *Leon,* "Nothing in our opinion suggests . . . that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." (*Leon, supra,* 468 U.S. at p. 923, fn. 24 [82 L.Ed.2d at p. 698].) Similarly, an officer who does not merely execute but prepares and submits a warrant application containing misstatements and omissions cannot rely on the acceptance of that application as evidence that his conduct was objectively reasonable. A magistrate who determined that probable cause exists on the basis of such an affidavit did not make a fully informed decision. Such a determination should not affect a reviewing court's assessment of whether the officer who made the misstatements or omissions possessed an objectively reasonable belief in the existence of probable cause.

We recognize that *Massachusetts* v. *Sheppard* (1984) 468 U.S. 981, 990 [82 L.Ed.2d 737, 744-745, 104 S.Ct. 3424] indicates that an officer is not required to second-guess a magistrate who has assured him a warrant is valid in spite of technical errors on its face. However, the issue in that case is very different from that presented when an officer's good faith is properly placed in issue. In *Sheppard* the errors were clerical in nature and probable cause unquestionably existed. In this case, on the other hand, the trial court found no probable cause and, as we explain, there were serious deficiencies in the warrant application.

It is with these principles in mind that we proceed to determine whether the trial court properly addressed the question of good faith and correctly decided that issue.

## II.

The first of the four situations in which, according to *Leon,* suppression remains the appropriate remedy—i.e., where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth" (*Leon, supra,* 468 U.S. at p. 923 [82 L.Ed.2d at pp. 698-699])—leaves untouched the doctrine of *Franks* v. *Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674]. (See 1 LaFave, Search & Seizure (2d ed. 1987) § 1.3(f), pp. 63-64.) Thus, in cases such as this one in which it is alleged that the affidavit contained material misstatements and omissions, *Leon* and *Franks* may both apply. This overlap should not be permitted to obscure the fact that a *Franks* hearing is very different from a good faith hearing. Under *Franks* the critical question is whether an intentional or reckless misrepresentation in a search warrant affidavit was material in the issuing magistrate's determination of probable cause. If a defendant establishes by a preponderance of the evidence that the affiant intentionally or recklessly included false material in the search warrant affidavit, the reviewing court must excise that information and determine if the information remaining in the affidavit still supports a finding of probable cause. (*Id.,* at pp. 155-156 [57 L.Ed.2d at p. 672].) Similarly, the reviewing court must add to the affidavit intentional or reckless omissions and reevaluate the determination of probable cause in light of this new information. Thus, the starting point of a *Franks* hearing is always a search warrant affidavit that on its face supports a finding of probable cause.

Unlike a *Franks* hearing, a good faith hearing under *Leon* starts out with an affidavit previously found not to establish probable cause, and the burden is on the prosecution, not the defense. Furthermore, whereas the critical issue at the *Franks* hearing is whether the magistrate was actually misled by an intentional or reckless misstatement or omission, suppression remains appropriate under *Leon* if, entirely apart from whether dishonest or reckless misrepresentations actually misled the magistrate, the officer "could not have harbored an objectively reasonable belief in the existence of probable cause." (*Leon, supra,* 468 U.S. at p. 926 [82 L.Ed.2d at p. 701].) Whether a well-trained officer could have harbored such an objectively reasonable belief may turn on whether the officer's affidavit contains any misstatements or omissions, as an officer who misrepresents the facts to the magistrate has less reason to believe in the existence of probable cause than an officer who makes no such misrepresentation. In other words, misstatements or omissions in the affidavit may bear upon whether the officer's belief in the existence of probable cause was objectively reasonable regardless of whether they were material to the magistrate's probable cause determination under *Franks.* (*United States* v. *Boyce* (D.Minn. 1985) 601 F.Supp. 947, 955.) As

*Malley* v. *Briggs, supra,* 475 U.S. 335, makes clear, the conduct of the magistrate is not to be considered in judging the objective reasonableness of the warrant application. Simply stated, the element of materiality is essential to the first of the four situations in which *Leon* declares that suppression is still proper, but not to the third situation, which is the one relied upon in this case.

The finding of the trial court that the misstatements and omissions in Officer Silva's affidavit did not relate to material facts seems to us both gratuitous (since the court previously found the affidavit invalid on its face) and erroneous (since applying the *Franks* analysis it is difficult to believe the magistrate was not misled). Our decision need not turn on this issue, however, because the trial court proceeded to inquire into Officer Silva's good faith despite its ruling that his misstatements and omissions were not material.

## III.

The precise nature of the People's burden to establish good faith depends upon the particular factors that in a given case suggest it may be lacking. In the present case, as we have indicated, defendant's attack on Officer Silva's good faith was based upon the misstatements and omissions in the affidavit, the use of unreliable informants and stale information, and the failure to independently verify the information relied upon. Given the erroneous earlier ruling that the misstatements and omissions were not material, the district attorney's burden was to show that the affiant had an objectively reasonable belief that probable cause existed at the time he applied for the warrant.

Officer Silva, the only witness at the good faith hearing, testified at some length about his training and experience.[4] Such testimony is not particularly germane. The objectively ascertainable question is not whether Officer Silva was well trained or experienced, but whether a reasonably well-trained officer in his position would have known that his affidavit failed to establish probable cause. (*United States* v. *Leon, supra,* 468 U.S. at p. 922, fn. 23 [82 L.Ed.2d at p. 698]; *Malley* v. *Briggs, supra,* 475 U.S. at p. 345 [89 L.Ed.2d at p. 281].)

---

[4] Essentially, Silva stated that he had been a police officer for seven years, that he attended the police academy, that for about one year he had been assigned to the "crime suppression unit," which "deal[t] predominantly in drugs, narcotics and vice," that prior to executing the instant warrant he had prepared search warrants fifteen times, that he had attended a three-hour class on how to prepare a search warrant and had subsequently discussed the subject with a deputy district attorney two or three times, and that on one occasion he had an affidavit for a search warrant rejected by the same magistrate involved in this case because of insufficient information.

When defense counsel asked Silva whether he thought it important to let the magistrate know the informant had suffered four felony convictions the court sustained an objection, commenting "We're not talking about any material omissions or misstatements." Silva testified that he took no notes of his conversations with Giannini because "I feel I have a good memory." He stated that it was he, not Giannini, who brought up the name of defendant and that when he met with her, shortly before Christmas Eve, he received the impression she wanted to "sell" information to the police so she could get home for the holidays.

When defense counsel asked the court whether he could ask Silva what he heard on the tape of the conversation between Giannini and defendant the court interposed its own objection, stating: "I've listened to the tape and already made a ruling on this. Again, to me, this is limited to whether or not the officer was acting in good faith, and we're not going to relitigate what we've already done." Pointing out that Giannini's statement on the tape "I heard your shit was real good," indicated she had never bought drugs from defendant, defense counsel asked the court whether he could inquire of Silva "whether or not he thought . . . that maybe his informant wasn't being honest and truthful, maybe had a duty to bring something like that to the attention of the Magistrate." The court said no, because "I think we're relitigating issues that really have already been litigated." When Silva admitted that he had no information about defendant other than that stated in the affidavit, the district attorney objected to the question as irrelevant, on the theory that the question of good faith "should be limited to what's in the affidavit." The trial court sustained this objection and struck Silva's admission.

Defense counsel's questions concerning what Silva knew or should have known and whether he intended to fully inform the magistrate were related to the question of objective good faith and should have been permitted. So too should the court have allowed questions relating to whether the officer knew or should have been aware of the misstatements and omissions in the affidavit. As we have explained, the fact that misrepresentations may not have related to material facts is not dispositive of good faith. The question is not simply whether the magistrate was misled, but whether, leaving aside the fact that the magistrate accepted the affidavit, a reasonably well-trained officer in Officer Silva's position "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." (*Malley* v. *Briggs, supra,* 475 U.S. at p. 345 [89 L.Ed.2d at p. 281], fn. omitted.)

As the trial court pointed out prior to commencement of the good faith hearing, it was the People's burden to establish good faith. The district

attorney made little affirmative effort to discharge this responsibility, however, relying instead on efforts to prevent defense counsel from establishing bad faith. The district attorney also took the position, as we have seen, that the ruling that the misstatements and omissions were not material to the magistrate's probable cause determination relieved him of the burden of addressing these defects. As we have emphasized, however, misstatements and omissions in the affidavit relate not only to the first of the four situations described in *Leon* in which suppression remains appropriate (where the magistrate is actually misled) but also to the third situation, where the affidavit is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " (*Leon, supra,* 468 U.S. at p. 923 [82 L.Ed.2d at p. 699].) When used in this connection, the misrepresentations need not relate to material facts that succeed in misleading the magistrate. If, as in this case, the officer whose good faith is in question was involved in preparation of the affidavit, the fact that he misstated or omitted any information, or was aware of such misrepresentations, tends to show the objective unreasonableness of belief in the existence of probable cause. As stated in *Leon,* "the deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." (468 U.S. at p. 914 [82 L.Ed.2d at p. 693].)

The good faith hearing conducted in this case provided no explanation for Officer Silva's misstatements and omissions and for the fact that information in the affidavit is inconsistent with the taped conversation and the police report. These defects and inconsistencies suggest Silva sought to create the false impression of informant reliability.

Significantly, the misrepresentations are not the only reason to question objective good faith in this case. Officer Silva testified that he understood the legal concept of staleness and knew the information from Macklin was stale. He said he made no effort to learn whether Macklin had a criminal history that might bear upon his credibility. Silva's testimony also establishes that the information set forth in the affidavit was the *only* information he had concerning defendant's criminal activity, and that he made no attempt to corroborate this information by surveillance of defendant's home or place of business or in some other fashion. Considering that the information upon which Officer Silva acted consisted at best of the statements of two informants whose credibility and reliability were very much in question describing failed attempts to purchase cocaine from defendant on separate occasions, one of them nearly four years earlier, the failure to corroborate renders it entirely unreasonable for a well-trained police officer to believe in the existence of probable cause.

 Because it is or should be self-evident that the unverified story of an untested informer is ordinarily unreliable (*Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929, 946, 952 [216 Cal.Rptr. 817] (conc. opn. of Crosby, J.)), the police bear a heavy and very well-known responsibility to independently substantiate such information. It is well settled that information from an untested or unreliable informant does not establish probable cause unless it is "corroborated in essential respects by other facts, sources or circumstances." (*People* v. *Fein* (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583].) The heavy emphasis courts traditionally have placed upon corroboration was not diminished when, in *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317], the Supreme Court rejected the two-pronged *Aguilar-Spinelli* [5] test of probable cause and adopted instead the more relaxed totality of the circumstances approach. As stated in *Gates*, "Our decisions applying the totality-of-the-circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip *by independent police work.* In *Jones* v. *United States* [1960] 362 U.S. [257] at 269, we held that an affidavit relying on hearsay 'is not to be deemed insufficient on that score, so long as a *substantial basis* for crediting the hearsay is presented.' We went on to say that even in making a warrantless arrest an officer 'may rely upon information received through an informant, rather than upon his direct observations, *so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.*' [Citation.]" (*Id.,* at pp. 241-242 [76 L.Ed.2d at p. 550], italics added.)

The relevance of corroborative police work to the issue of good faith is shown by *Leon* itself. The conclusion that the officers in that case acted in good faith rested in part on the fact, repeatedly emphasized by the Supreme Court, that they undertook an "extensive investigation" (*United States* v. *Leon, supra,* 468 U.S. at pp. 901, 926 [82 L.Ed.2d at pp. 684,700-701]) consisting, among other things, of the surveillance of all three locations at which informants claimed drugs were being sold or stored. (*Id.,* at pp. 901, 902 [82 L.Ed.22d at pp. 684, 685].)

Gates and *Leon* do not suggest, nor do we, that the failure to independently corroborate evidence received from an informant necessarily shows that good faith is lacking. It is only where, as here, neither the veracity nor basis of knowledge of the informant is directly established, the information is not so detailed as to be self-verifying[6] and there is no logistical or other

---

[5] *Aguilar* v. *Texas* (1964)) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584].

[6] The idea that "there are limited special circumstances in which an 'honest' informant's report, if sufficiently detailed, will in effect verify itself" (*Spinelli* v. *United States, supra,* 393 U.S. 410, 425 [21 L.Ed.2d at p. 649], conc. opn. of White, J.), was first expressed by the

reason why verification from other sources cannot be achieved, that the failure to corroborate may be indicative that it was objectively unreasonable for the officer to believe in the existence of probable cause.

Nor should the views set forth in this opinion be construed as in any way authorizing a judicial inquiry into the subjective motivation of officers who prepare or submit a warrant application. As we have been at great pains to emphasize, such an enterprise has been explicitly proscribed by *Leon* and would impose intolerable burdens on trial judges. (See *Harlow* v. *Fitzgerald* (1982) 457 U.S. 800, 817 [73 L.Ed.2d 396, 409-410, 102 S.Ct. 272].)

The objective standard adopted in *Leon* "requires officers to have a reasonable knowledge of what the law prohibits." (*Leon, supra,* 468 U.S. at p. 920, fn. 20 [82 L.Ed.2d at p. 696].) As indicated, the record in this case strongly suggests that a well-trained police officer would have known that the affidavit in question failed to establish probable cause. However, the record may be distorted by the numerous erroneous evidentiary rulings that resulted from the trial judge's misconception of the good faith issue presented. In order to provide the parties an opportunity to properly address this issue, it is appropriate to remand for another hearing on the question whether Officer Silva's belief in the existence of probable cause was objectively reasonable.

Accordingly, the judgment is reversed and the matter remanded for further proceedings consistent with the views expressed in this opinion.

Smith, J., and Benson, J., concurred.

Petitions for a rehearing were denied September 21, 1988.

---

Supreme Court in *Spinelli* v. *United States* (*id.,* at p. 417 [21 L.Ed.2d at p. 644]) and was reaffirmed in *Illinois* v. *Gates, supra,* 462 U.S. at pp. 233-234 [76 L.Ed.2d at p. 545]; see also *United States* v. *Mark Polus* (1st Cir. 1975) 516 F.2d 1290, 1293; *United States* ex rel. *Saiken* v. *Bensinger* (7th Cir. 1973) 489 F.2d 865, 866; *United States* v. *Sellers* (5th Cir. 1973) 483 F.2d 37, 40-41 [25 A.L.R.Fed. 233].) It should be emphasized that we are not employing this theory in connection with the establishment of probable cause, which has been criticized in many applications (see, e.g., 1 LaFave, Search & Seizure, *supra,* § 3.3(e), p. 670 et seq.), but solely with respect to the question of good faith.