Jerome DEAN

v.

Joshua FLUTY; Charlie Beck; City of Los Angeles, Does 1–10

2:16–cv–00979–SVW–FFM

United States District Court, C.D. California.

Filed 02/02/2017

Ian Michael Wallach, The Law Offices of Ian Wallach PC, Los Angeles, CA, for Jerome Dean.

Elizabeth Anne Mitchell, Surekha A. Pessis, Los Angeles City Attorneys Office, Los Angeles, CA, for Joshua Fluty; Charlie Beck; City of Los Angeles, Does 1–10.

**Proceedings:** IN CHAMBERS ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [72].

STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Plaintiff Jerome Dean brings this action against Officer Joshua Fluty of the Los Angeles Police Department ("LAPD"); Charlie Beck, Chief of Police of the LAPD; and the City of Los Angeles (collectively, "the Defendants"). The claims involve an arrest of the Plaintiff made by Officer Fluty, which the Plaintiff alleges was a wrongful arrest that gives rise to causes of action against the Defendants. Specifically, the Plaintiff alleges civil rights violations pursuant to 42 U.S.C. § 1983 for 1) false arrest and malicious prosecution; 2) intentional use of unduly suggestive identification procedure; and 3) *Monell* liability for failure to tram, supervise, and discipline. *See* Complaint, Dkt. 1 ("Complaint"). The

Plaintiff also alleges state law claims, including false arrest or imprisonment, intentional infliction of emotional distress, negligence, malicious prosecution (including perjury, fabrication of evidence, failure to disclose exculpatory evidence with malice pursuant to Cal Gov't Code § 820.21), and violation of Cal Civ. Code § 52.1.

The trial in this matter was originally scheduled for November 29, 2016. There Court held a pretrial conference on Monday, November 21, 2016, where the Court heard oral arguments regarding the Plaintiff's Motion for Partial Summary Judgment on the First and Fourth Causes of Action (the claims for false arrest/imprisonment). Dkt. 23. Based on the briefings of the parties and the arguments at the oral hearing, it became clear to the Court that several legal issues that had not been addressed in pretrial motions prevented an effective trial from taking place. As a result, the Court ordered the Defendants to file a Motion for Summary Judgment addressing the Court's concerns. Dkt. 70.

Presently before the Court is that Motion for Summary Judgment brought by the Defendants. The Court asked the Defendants to address whether Officer Fluty is entitled to qualified immunity for his initial probable cause determination regarding the arrest of the Plaintiff and whether the Defendants are entitled to qualified immunity for the identification procedure through which an informant later identified the Plaintiff. For the following reasons, the Court finds that as a matter of law probable cause existed at the time of the Plaintiff's original arrest, and at the very least Officer Fluty is entitled to qualified immunity. Therefore, the Motion for Summary Judgment is GRANTED.[1]

---

1. Having read and considered the papers presented by the parties, the Court finds this matter suitable for determination without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7–15. Accordingly, the hearing scheduled for

Additionally, the Court finds that the eyewitness identification of the Plaintiff further supported probable because there were sufficient indicia of reliability to protect the integrity of the identification. Therefore, the initial arrest was not unlawful, and the Defendants cannot be held liable for actions related to the arrest.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Only a small subset of the material facts in this case are disputed, as for the most part the parties agree on the important events that transpired. On January 19, 2015, Defendant Fluty was investigating allegations of drug sales at an 8704 Wadsworth address. Defendants' Motion for Summary Judgment, Dkt. 72 ("MSJ"), 1. While performing surveillance on the Wadsworth residence. Officer Fluty observed a black male who was bald and had a long goatee exit the location of the Wadsworth address for approximately 10 minutes, then re-enter. *Id.* at 1–2. This person was later identified as the Plaintiff. *Id.* at 2. Several horns later. Officer Fluty used a non-confidential informant named Sandy Charles ("NCI") to perform a controlled drug buy. *Id.* The NCI had provided accurate and reliable information to law enforcement in the past. *Id.* When the NCI performed the controlled drug buy, she entered the Wadsworth residence and witnessed a negotiation for rock cocaine between a "hook," which is a person who brings new customers to narcotics dealers, and a narcotics dealer. *Id.* After performing the buy, the NCI reported back to Officer Fluty and described the seller of the rock cocaine as a "bald, black, male with a goatee," which she confirmed in a written statement. *Id.*

At this point, what happened next between the NCI and Officer Fluty is disputed by the parties. The Defendants contend that after the NCI gave Officer Fluty the description of the seller as a "bald, black, male with a goatee," he remembered the man he had seen earlier outside the same location and on the same day. *Id.* As a result, he clarified the description with the NCI and asked her if the seller was about 5 feet, 10 inches and 220 pounds, to which she agreed. *Id.* Then, he further clarified if the seller had a long goatee and demonstrated the length with his hand, to which the NCI also agreed. *Id.*

On the other hand, the Plaintiff disputes that the NCI ever gave Officer Fluty the description of the height and weight or the goatee length of the seller. Opposition, Dkt. 79 ("Opp."). 2–3. Instead, the NCI provided written statements that only contained the description of a "male, bald, black with a goatee." *Id.* at 2. The Plaintiff alleges that when Officer Fluty completed a sworn search warrant affidavit, he added the more detailed description himself based on his previous observation of the Plaintiff. *Id.* at 3. He also modified his statement with handwritten edits to reflect that the NCI gave the more detailed description, even though she had not. *Id.* The Plaintiff cites to testimony elicited during the criminal proceedings against the Plaintiff in which both Officer Fluty and the NCI both seem to suggest that the more specific description had not originated with the NCI. Affidavit of Ian Wallach, Dkt. 80 ("Wallach Aff."), ¶¶ 6–7, Exs. C, E.

Officer Fluty completed a search warrant application, and based on the attached affidavit, a judge for the Los Angeles Superior Court signed the warrant. MSJ at 2. The judge asked Officer Fluty to handwrite the description of the rock cocaine dealer on page 7 of the affidavit, which he did. *Id.*

February 6, 2017, at 1:30 p.m. is VACATED and OFF CALENDAR.

The following day, on January 20, 2015, the NCI performed another buy at the same address, and informed Defendant Fluty that the "dealer from last night" (the seller at issue) was present at the 8704 Wadsworth address, although he was not the seller in the second transaction. *Id.*

The search warrant was subsequently served at the location and Plaintiff was not present, nor was anyone else fitting the NCF's description of a black bald male with a goatee. *Id.* at 2–3. Approximately two weeks later, on February 2, 2015, Defendant Fluty and his partner returned to the Wadsworth residence to conduct surveillance. *Id.* at 3. They saw the Plaintiff leaving the Wadsworth address with approximately $150 in cash in his hand. *Id.* Defendant Fluty approached the Plaintiff and searched him, and although he recovered no contraband, he did find $283 and a cell-phone. *Id.* Defendant Fluty then put Plaintiff in handcuffs, put him in a patrol car, and delivered him to the police Station, where he handcuffed him to a chair pending an identification. *Id.*

At the station, Detective Cortinas took a photograph of the Plaintiff and then made arrangements to meet with the NCI in order to show her the digital image. *Id.* The NCI positively identified the Plaintiff as the individual who sold her narcotics on January 19, 2015: this information was relayed to Officer Fluty by telephone. *Id.* The total amount of time from handcuffing to positive identification was approximately 25 minutes. *Id.* At this point, the Plaintiff was read his *Miranda* rights, and he declined to answer questions. *Id.*

On February 5, 2015, the District Attorney's Office filed a single count of sale of a controlled substance against the Plaintiff.

However, the Plaintiff won a motion to suppress the arrest and identification procedures. *Id.* Additionally, Officer Fluty was prevented from testifying frilly about the circumstances of the origin of the descriptors, and the criminal charges were subsequently dismissed.[2] The Plaintiff subsequently brought the current action, contending that he was the victim of a wrongful arrest and numerous other violations related to the above events. Dkt. 1, Complaint.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505. However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact

---

2. The Plaintiff does not dispute that Officer Fluty was not allowed to testify as to where the descriptors originated from during the criminal trial due to an alleged error by the Deputy District Attorney in turning over documents to the other party. Plaintiff's Motion for Summary Judgment. Dkt. 23. Ex. E. 20–24.

to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

## IV. DISCUSSION

The main questions in this case to be decided either by the Court are at what point Officer Fluty placed the Plaintiff under arrest and at what point probable cause existed for his arrest. If probable cause existed at the time of the arrest, or if Officer Fluty is entitled to qualified immunity for his decision to arrest the Plaintiff, then the Plaintiff cannot prevail on his claims. However, if probable cause for the Plaintiff's arrest clearly arose only after the initial arrest, meaning that Officer Fluty is not entitled to qualified immunity, then the Plaintiff's claims survive. The Court now finds that as a matter of law the Plaintiff was arrested by Officer Fluty at the Wadsworth address before being transported to the police station. However, probable cause to arrest the Plaintiff existed at the time of the initial arrest under an objective analysis of the undisputed facts. Additionally, the Court finds that Ms. Charles's identification of the Plaintiff by his picture was valid because there were sufficient indicia of reliability to support her identification, thus further supporting probable cause later in the proceedings.

### A. Officer Fluty's Initial Arrest of the Plaintiff

#### 1. The Plaintiff was under arrest at the time he was first handcuffed

█ As a preliminary matter, the Court reiterates that considering "the totality of the circumstances" the Plaintiff was under arrest at the time he was first handcuffed by Officer Fluty, as the Court initially stated at the pretrial conference on November 21, 2016. *See Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). The methods used by the officers in this instance were sufficiently intrusive to constitute an arrest. The Plaintiff was handcuffed, patted down, and transported to the police station in the police vehicle. At the police station, the Plaintiff was handcuffed to the table while the officers took his picture and contacted the NCI. Although the Defendants originally contended that these actions should be considered a detainment because they lasted less than half an hour, the totality of the circumstances demonstrates that these actions rose to the level of an intrusive arrest, not a temporary detainment. *See id.* (stating that, among other factors, "handcuffing substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry* stop."). Therefore, the next question before the Court is whether probable cause existed at the time of Officer Fluty's arrest of the Plaintiff.

#### 2. Probable Cause Existed at the Time of the Plaintiff's Initial Arrest

█ However, the Court now finds that the arrest of the Plaintiff was not unlawful because probable cause existed to arrest him, based on an objective analysis of the undisputed facts known to Officer Fluty at the time of the arrest.

█ "[T]he touchstone of the Fourth Amendment is reasonableness. Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347

(1996) (internal citations omitted). "Probable cause exists if, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fan probability that individual had committed the crime." *United States v. Hernandez*, 314 F.3d 430, 433 (9th Ch. 2002) (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

The Court concludes that based only on the undisputed facts that were known to the arresting officers, there was a fair probability that the Plaintiff was the person who sold narcotics to the NCI. Summary judgment is appropriate on this issue because even considering the facts in the light most favorable to the Plaintiff, the information known to Officer Fluty at the time of arrest supported probable cause. First, Officer Fluty observed the Plaintiff for approximately ten minutes at a residence known to be a location for narcotics sales.[3] Second, an NCI, who had given reliable and accurate information to law enforcement in the past, performed a controlled drug buy of rock cocaine at the residence on the same day that Officer Fluty observed the Plaintiff. Third, the NCI described the man who had sold her the narcotics as bald, black, male, with a goatee.[4] Fourth, this description, although relatively general, undisputedly matched the appearance of the Plaintiff at that time. Fifth, the NCI saw the same dealer again at the residence the next day. Finally, two weeks later. Officer Fluty saw the Plaintiff, whom he recognized from his prior observations and the general description of the NCI, pull up to the same Wadsworth residence and walk towards it with a significant amount of cash in his hand. Based on Officer Fluty's knowledge at that point in time, he had probable cause to arrest the Plaintiff because there was a fan probability that the Plaintiff was the narcotics dealer described by the NCI.[5] While the NCI's description alone may not have demonstrated probable cause, the officer's related observations, such as the Plaintiff's presence at the residence on the same day the NCI made the controlled buy and the officer observing the Plaintiff approach a location known for narcotics sales with a significant amount of cash in his hand, supports a probable cause finding. At the time of the arrest, the officer knew all of these undisputed facts. Therefore, the Court finds as a matter of law that probable cause existed at the time of the initial arrest. Since even only considering the undisputed facts of the case the Court finds that probable cause existed, the Defendants are entitled to summary judgment.

The Plaintiff's central argument is that Officer Fluty acted in bad faith because he

---

**3.** The Plaintiff does not dispute this fact and in fact even hypothesizes that this observation was the source of the specific descriptors added by Officer Fluty to the search warrant application but attributed to the NCI. Opp. at 4.

**4.** In its probable cause analysis, the Court does not consider that the NCI allegedly confirmed Officer Fluty's follow-up clarifications about whether the narcotics dealer was 5'10, 220 pounds, with a long goatee, as that aspect of the probable cause analysis is contested by the Plaintiff and therefore inappropriate to consider in the context of the present Motion.

**5.** The Plaintiff also argues that probable cause did not exist to arrest him because the NCI stated that the original seller was at the Wadsworth residence on January 20, but when the officers raided the residence the Plaintiff was not there. However, no one matching the description that the NCI gave to Officer Fluty was at the house, meaning that most likely the seller, whether it was the Plaintiff or not, left the house before the police arrived. Thus, this fact does not affect the likelihood in either direction that the Plaintiff and the seller were the same people.

modified the NCI's description of the seller to provide more specific details that he did not obtain from the NCI herself. He then included those specific details in his affidavit attached to the search warrant he sought for the Wadsworth residence, potentially misleading the judge into thinking the NCI had provided a more specific description than she actually had. However, this possibility, even if assumed true for the purposes of this Motion, does not affect the probable cause analysis, which is an objective analysis of the facts known to the officer at the time. *See Robinette*, 519 U.S. at 39, 117 S.Ct. 417. He did not rely on the search warrant in any way in executing the arrest on the Plaintiff, as the Plaintiff was not inside the residence at the time of the arrest.[6] Therefore, Officer Fluty's actions during his application for the search warrant do not at all affect the Court's analysis of the facts known to the officer at the time of arrest. Even if Officer Fluty obtained the more specific descriptors regarding the height, weight, and goatee length of the suspect from his own observation of the Plaintiff rather than the NCI's observation of the seller, objective analysis of the totality of the circumstances would still support a finding of probable cause. The officer's subjective beliefs or motivations are not relevant to a Court's probable cause analysis. *See Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Therefore, even if Officer Fluty manipulated the search warrant because he believed the Plaintiff and seller to be the same person based on a hunch, the Court's determination based on an objective analysis of the available information would remain unaffected. Consequently, the Court finds that probable cause existed at the time of the Plaintiff's arrest, even if the Plaintiff's accusations against Officer Fluty are true.

Additionally, the Plaintiff argues that Officer Fluty's misconduct related to the descriptors calls into question his credibility and the probable cause determination as a whole. Therefore, the probable cause determination should go to a jury. First of all, the Court acknowledges that a probable cause determination usually involves factual matters, meaning that probable cause is usually a question for the jury. *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984). Additionally, summary judgment is not appropriate in cases that turn on the officer's credibility that is genuinely in doubt. *See Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016) (making the same finding in excessive force cases). However, the present case is distinguishable from these cases, which are cited by the Plaintiff, because the facts on which the Court relied are undisputed, meaning that there are no factual determinations to be made by the jury nor does the case turn on Officer Fluty's credibility. The Plaintiff readily admits that he uses the Wadsworth residence and does not dispute that Officer Fluty observed him at the residence on the day in question. He does not dispute that he fit the general description provided to Officer Fluty by the NCI that the seller of narcotics was male, bald, black, with a goatee. He admits that he was apprehended with over $150 in cash in his hand and more in his wallet. Therefore, there are no factual determinations needed to be made by a factfinder that would affect the Court's probable cause analysis. Naturally the Plaintiff disputes that he ever used the Wadsworth residence for narcotics-related

---

6. The Court acknowledges that such actions taken by Officer Fluty, if true, may have called the original warrant into question if it formed the basis for the Plaintiff's arrest. However, the warrant played no part in the arrest of the Plaintiff, and therefore its validity is not relevant to the current action.

purposes or that he was the person the NCI saw inside the house, but probable cause only requires a "fair probability" that the Plaintiff was the seller seen by the NCI. The Court finds that such a fair probability existed, and therefore it is appropriate in this case for the Court to find on summary judgment that the arrest of the Plaintiff was lawful and supported by probable cause.

Finally, the Plaintiff argues that probable cause could not have existed at the time of the original arrest because several other people involved in this action either clearly stated or suggested by their actions that probable cause did not exist. First, the Plaintiff presents the opinion of a police practices expert, who stated that probable cause did not exist in this case. *See* Maeweather Affidavit, Wallach Aff. at ¶ 16, Ex. N. Second, the Plaintiff argues that a state court judge suppressed the photographic identification because probable cause did not exist for the arrest, while the judge who signed the original warrant required Officer Fluty to add in the additional descriptors before finding probable cause. Opp. at 7–8. Finally, Officer Fluty's own actions and testimony suggested that probable cause did not initially exist because he maintained that he detained the Plaintiff rather than arrested him, and he falsified a search warrant affidavit in order to provide further support for probable cause. *See People v. Maestas*, 204 Cal. App.3d 1208, 1216, 252 Cal.Rptr. 739 (1988) (finding that a jury can consider false statements made by officers to magistrates in determining whether a reasonable officer would believe probable cause existed within the context of qualified immunity).

The Court finds that none of these arguments are persuasive. The expert opinion presented by the Plaintiff is not relevant to the Court's analysis because probable cause is an objective question for the Court to decide. While an expert report may be considered as relevant evidence of reasonableness in a qualified immunity analysis, *see, e.g., Glenn v. Washington Cnty.*, 673 F.3d 864, 877 (9th Ch. 2011), the Court conducts its own analysis of whether probable cause existed based on an objective analysis of the facts, and therefore the Court is not swayed by the expert opinion presented by the Plaintiff. Similarly, although a state court found that the additional descriptors were necessary for a finding of probable cause, the Court disagrees, as other undisputed evidence supported a finding of probable cause in addition to the general descriptors provided by the NCI.[7] As a final point, the Court notes that Officer Fluty's potential embellishment of the search warrant affidavit does not suggest the absence of probable cause, as he was filling out a search warrant, not an arrest warrant. He had no reason to falsely emphasize the evidence against the Plaintiff because he was not seeking a warrant to arrest that particular individual. Therefore, those actions do not have a bearing on the probable cause analysis.

As a result of its objective analysis of the facts that were undisputedly known to Officer Fluty at the time of the arrest, the Court finds that probable cause existed for the arrest of the Plaintiff. This does not mean that the Court finds that the Plaintiff was in fact the seller of narcotics to the NCI, or even that the Plaintiff ever used the Wadsworth residence for drug-related purposes. Instead, the Court's finding merely reflects that there was a "fair probability" that the Plaintiff was the one who sold drugs to the NCI, based on the personal observations of Officer Fluty and the

---

7. Additionally, the state court's finding does not present a circumstance of collateral estoppel because the Defendants were not parties to the original decision.

information he received from the NCI that was undisputed by the Plaintiff. Therefore, the arrest was not unlawful, and the Defendants' Motion for Summary Judgment is GRANTED.

### 3. Qualified Immunity for the Initial Arrest

 Because the Court finds that probable cause for the Plaintiff's arrest existed at the time the arrest was executed, no discussion of qualified immunity is necessary. However, the Court notes that even if probable cause did not exist at the time Officer Fluty arrested the Plaintiff, he would be entitled to qualified immunity for the arrest. Qualified immunity protects police officer defendants from liability for civil damages when performing discretionary functions, unless such conduct violated a clearly established constitutional or statutory right of which a reasonable officer would have known. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A qualified immunity analysis involves a two-step inquiry: first, whether the facts as the plaintiff alleges constituted a violation of the plaintiff's rights; and second, whether the defendant could have reasonably but erroneously believed that his conduct did not violate the plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In other words, the officer's conduct must be clearly unlawful. *Id.* at 202, 121 S.Ct. 2151.

Officer Fluty is entitled to immunity for his arrest of the Plaintiff The Court finds that the Plaintiff's rights were not violated, as probable cause existed for his arrest, for the reasons described above. Additionally, even if probable cause did not exist, Officer Fluty could have reasonably believed that probable cause did exist, meaning that he would be entitled to qualified immunity for his actions. A reasonable officer might believe that probable cause existed even if it did not, as there were numerous pieces of information that suggested the Plaintiff sold drags to the NCI, and indeed this Court believes that probable cause in fact did exist. Therefore, even if probable cause did not exist, Officer Fluty would be entitled to qualified immunity.

The Plaintiff argues that Officer Fluty's alleged misconduct precludes a finding of qualified immunity. He allegedly supplemented his search warrant affidavit with misleading information and subjected the Plaintiff to a misleading identification procedure. However, as discussed in this order, neither of those alleged actions affected the probable cause inquiry at the time of the Plaintiff's arrest. The identification had not occurred yet, and the search warrant played no role in the arrest of the Plaintiff, as all of the facts involved in the probable cause analysis were known to Officer Fluty independent of the search warrant application. Therefore, the alleged misconduct of Officer Fluty had no impact on the Plaintiff's eventual arrest. As a result, the arrest itself did not violate any rights of the Plaintiff. Further, even if it did. Officer Fluty would be entitled to qualified immunity because a reasonable officer relying on the information undisputedly and rightfully known by Officer Fluty could have concluded that probable cause existed for the Plaintiff's arrest. Consequently, the Motion for Summary Judgment can also be GRANTED on qualified immunity grounds.

### B. Sandy Charles's Identification of the Plaintiff

 Finally, although the Court has already found that probable cause existed at the time of the initial arrest, the identification of the Plaintiff by Sandy Charles, the NCI, provided further support of probable

cause to arrest the Plaintiff at that time.[8] Additionally, as the Court has found that the Plaintiff was already under arrest at the time of the identification, the identification procedure was not responsible for his unlawful arrest and therefore cannot form the basis of a civil rights violation.

■ The Court further notes that even if the Plaintiff was not under arrest or was unlawfully under arrest at the time of the identification, the identification would have provided probable cause for arrest because the witness exhibited sufficient indicia of reliability to protect the integrity of the identification. *See Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Whether a pre-trial identification was improper involves two related inquiries. First, did the officer employ an identification procedure so impermissibly suggestive as to give rise to a substantial likelihood of misidentification? *See Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Second, did the witness exhibit sufficient indicia of reliability to protect the integrity of her identification? *See Biggers*, 409 U.S. at 199, 93 S.Ct. 375.

For the first inquiry, the Court finds that the identification procedure was impermissibly suggestive. Showing a single photograph to a witness normally indicates a high level of suggestiveness. *See, e.g., United States v. Fowler*, 439 F.2d 133, 134 (9th Ch. 1971). While an exigency may excuse the suggestiveness of a single person lineup, no valid exigency existed hi this case. *See, e.g., Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 1967. The Plaintiff was already in custody and in handcuffs at the station. He had been arrested and was not free to leave the station. Therefore, there was no valid reason why a proper identification procedure could not have been followed. While the Defendants argue that taking the time to put together a hill lineup would have extended the time the Plaintiff was in custody, a suggestive lineup in which the Plaintiff was falsely identified would greatly extend that custody. There were no significant obstacles to a proper lineup and therefore the Court declines to find that an exigency justified the suggestive single photograph identification procedure.

■ However, the Court does find that although the procedure was unduly suggestive, the factors in *Biggers* demonstrate that the totality of the circumstances suggests that the identification was nevertheless reliable. In deciding the reliability of an identification, courts can look to (1) "the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (3) the level of certainty demonstrated by the witness at the confrontation, and (4) the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199, 93 S.Ct. 375. Ms. Charles was a non-confidential informant who regularly worked with the police and had provided accurate and reliable information hi the past. She was well-acquainted with the procedure and knew that she would have to describe the drug dealer that she was observing. She described the seller to Officer Fluty immediately after the drug buy, and even assuming only the more general description provided in her written statement was communicated to the officer, the description matched the Plaintiff. She saw the seller for several minutes on two days

---

**8.** Once again, the analysis of the suggestiveness of the identification is not a matter for the jury because the material and relevant facts are all undisputed. Thus, it is appropriate for the Court to make a decision on summary judgment because there are no disputes of material fact.

in a row, and recognized the seller the second time she saw him. Although Ms. Charles identified the Plaintiff 13 days after the original crime, 13 days is not so significant a period of time that would cause memory to lapse, particularly considering that the other factors weigh hi favor of a reliable identification. *See, e.g., United States v. Barron*, 575 F.2d 752, 754 (9th Ch. 1978) (approving a 2–month lapse between crime and pre-trial identifications); *Mata v. Sumner*, 696 F.2d 1244 (9th Ch. 1983) (approving an 11 day lapse of time between crime and identification).

As a result, the Court finds that although the identification procedure was impermissibly suggestive, there were sufficient indicia of reliability that the officers may have properly relied on the positive identification in then probable cause analysis. Thus, there is no question that probable cause to arrest the Plaintiff existed at the time of identification. Although this finding is not essential to the Court's decision on this Motion, as it has already found that probable cause existed before the identification at the time of the initial arrest, it has performed the identification analysis out of an abundance of caution.

Because the Court finds that the initial arrest of the Plaintiff was lawful, it does not reach the other issues included in the Motion, including the presumption that the district attorneys exercised independent judgment when charges were filed or the sufficiency of the *Monell* claim.

## V. ORDER

For the foregoing reasons, the Court GRANTS the Defendants' Motion for Summary Judgment. As probable cause to arrest the Plaintiff existed at the time of the initial arrest, the Plaintiff cannot sustain any claims against the Defendants related to his arrest, and summary judgment is granted in full. The prevailing party shall submit a proposed judgment consistent with this order.

IT IS SO ORDERED.